Ross HUNTER *v.* THOMAS EMERSON and MINNIE J. EMERSON.

October Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed February 9, 1903.

*Adverse possession—Elements of—Permissive use.*

The open, notorious and continuous taking of water from a spring, for a period of more than fifteen years, is permissive, and not adverse

and under a claim of right, when it is consistent with another's title, though no express license is given.

APPEAL IN CHANCERY. Heard on master's report and the orator's exceptions thereto, at the March Term, 1902, Washington County, *Start*, Chancellor. Decree, *pro forma*, for the orator. The defendants excepted.

*Gordon & Jackson* for the defendants.

The report of the master shows that the defendant Thomas Emerson and his predecessors in title, had, for more than thirty years, been in the open, notorious, and adverse possession of the spring, and land about the same included within the fences.

*Richard A. Hoar* for the orator.

Whatever right the defendants may have acquired by prescription is limited to their enjoyment of that right. Gould on Waters, s. 342; Jones Ease., s. 200. The defendants' use must be continuous and apparent, open and visible; and it must be exercised under a claim of right adverse to the owner and acquiesced in by him. *Ib.* s. 164. No easement can be acquired where the privilege is used by the express or implied permission of the owner. *Ib.* s. 179.

The report shows that the use which the defendant made of this spring was permissive, and not adverse.

TYLER, J. It appears by the master's report that the orator owned two pieces of land, adjoining each other, which he bought of one Gouldsbury in 1890 and 1895, respectively, and that he built a house upon the first piece soon after its purchase; that the defendants, since 1880, have lived in the house then bought by said Thomas Emerson of one Rice, whose title is traced back to 1850. It further appears that the defend-

ants, since 1880, and those who had owned and occupied the house before them for forty years prior thereto, had obtained all the water necessary for domestic purposes from a "log spring" situated upon the second piece of land purchased by the orator; that in 1893 the defendants made an excavation in the ground near the spring, upon the second piece of land purchased by the orator, and that the water percolated through the soil and filled the place, so that the defendants after that time got water there; that the following year, without the orator's knowledge, they put in a box to collect and hold the water; that when the orator learned of it, in 1897, he objected, and requested the defendants to remove it.

After the orator moved into his house, in 1890, he used water from this spring in dry seasons, as he had occasion, and he also gave his neighbors the privilege of taking water there, but he got most of his water supply from another spring.

The orator claimed exclusive ownership of the spring by virtue of his title to the two pieces of land, and that the defendants got water therefrom only by his permission. The defendants claimed ownership of the spring by their own and their predecessors' long continued use of it; that such use had been open, notorious, and exclusive. It appears that, prior to the time the orator's house was built, the defendants and their predecessors in the ownership of the defendants' house had been the only users of the water, with the exception that passers by and workmen occasionally got water there to drink.

In 1899, the orator filled the log with stones so that no water could afterwards be obtained; the defendants put a cover upon the box and locked it; the orator forced the box open, and he and several of his neighbors continued to get water at that place,—the defendants objecting to their so doing.

It appears that for more than twenty years prior to Gouldsbury's purchase of the land in 1883, there had been a trough situated in a lane near the spring for holding water that came from the "log spring" for the use of cattle in the Gouldsbury pasture; and the master finds that the water found its way by percolation from the spring to the trough which was sunk in the ground.

The master finds, in effect, that if the defendants acquired any right to take water from the spring, it was not by the orator's license to them; and he submits the question whether, from the facts reported, the defendants acquired title by adverse possession.

The partial fencing around the spring, as reported, did not give the defendants such title, for it does not appear whether the fence was built by the owners of the Emerson house in assertion of their right to the spring, or for its protection; besides, it was not constructed so as to exclude other persons than the defendants from using the water. Nor did the defendants acquire title by placing the box in the ground, for the box was not maintained there long enough to acquire title by that means.

The report only shows that the defendants, and those who occupied their house before them, had for a long time taken water from the spring for family use, and that for the last thirty years they had taken it from a hollow log that stood in the spring.

While the case shows a continuous taking of the water, and for a much longer time than was necessary to acquire a right by adverse possession, and the taking was open and notorious, it was a permissive taking, consistent with the orator's title, and not adverse and under a claim of right. It is true the master finds that the defendants did not obtain a right by

the license or consent of Gouldsbury while he owned the orator's house, yet it may have been permissive in a legal sense. In *O'Neil* v. *Blodgett,* 53 Vt. 213, it was held that merely using a way open to and occupied by the public for the purpose of getting water for cattle and a family, had no tendency to prove an adverse use; that such use must be made under a claim of right, brought to the attention of the owner of the land. And where there was a subsidence of the water in a mill pond, leaving it dry, so that cattle in an adjoining pasture could and did wander over the bottom of the former pond, it was held that such possession of the land was permissive and not adverse. *Eddy* v. *St. Mars,* 53 Vt. 462, 38 Am. Rep. 695. See, also, *Plimpton* v. *Converse,* 44 Vt. 158.

In this case the master finds no fact indicating that the defendants began to take water from the spring, under a claim of right to take it, making their claim known to the owner of the orator's premises, but the taking seems to have been as a matter of convenience to the defendants,—the orator and his predecessors in title making no objection until they had occasion to use the water themselves. Upon these facts, the defendants acquired no right, and the *pro forma decree must be affirmed and the cause remanded.*