PHILIP FALTER *et al.*

*v.*

JOHN E. PACKARD *et al.*

*Opinion filed December 20, 1905—Rehearing denied Feb. 13, 1906.*

1. ESTOPPEL—*when city is estopped to claim title to land.* A city is estopped in a partition suit to claim title to the land involved, where, within twenty years prior to the filing of the bill, it conveyed the land, which had been deeded to the city for taxes, to the complainants' father, and within but a few years prior to the filing of a bill condemned a portion of the land for a highway and levied a special assessment against it as the property of the complainants' father, who paid the taxes on the land each year after he received the deed therefor.

2. PRESCRIPTION—*twenty years' user is only prima facie evidence of easement.* Twenty years' user is only *prima facie* evidence of the right or title to an easement, and the user must be adverse, exclusive, continuous and uninterrupted, under claim of right, with the knowledge of the owner of the land but without his consent.

3. SAME—*what does not establish a highway by prescription.* Proof that a strip of land marked "reserved" on a plat was for many years open prairie, so that teams or pedestrians could pass through it without obstruction, does not establish a highway by prescription.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This was a suit in partition, begun in the superior court of Cook county by John E. Packard, claiming to be the owner of an undivided half interest in a certain strip of land sixteen feet in width and about six hundred feet long, in the city of Chicago, alleging that his sister, Felicia N. Norris, was the owner of the other undivided half interest in said premises. The bill made Philip Falter and about forty others parties defendant, together with the city of Chicago, asserting that all the defendants claimed to have some right or interest in and about said property but in fact had none, and

prayed for partition of the strip of ground in question and that all persons named defendants answer, and prayed for general relief. The city of Chicago answered, denying that either complainant or his sister, Felicia N. Norris, was the owner of the strip of ground in question, but claiming that the strip of ground had been for over twenty years a public alley, and that complainant and Felicia N. Norris have no private or special rights thereto, but that the fee was vested in the city of Chicago for the use of the public, and that the strip had been in possession of the public for more than twenty years last past, and that the public owned the fee; denied that the complainant is entitled to the relief prayed or any part thereof, and denied all the allegations of the bill and asked that the bill be dismissed, etc. Appellant Falter and five others answered, denying all the allegations of the bill, the answer being practically the same as the one filed by the city of Chicago.

The cause was referred to the maser in chancery to take testimony and report both conclusions of law and fact. The master made his report recommending the dismissal of the bill, and finding that neither appellant nor Mrs. Norris had any interest in the premises in question. Objections were filed to the master's report, which stood as exceptions, by agreement, upon trial before the chancellor. The chancellor, upon hearing, found that complainant, John E. Packard, was the owner in fee simple of the undivided one-half of the premises in dispute and that Mrs. Norris was the owner of the other undivided one-half mentioned, and that no person or persons other than the said complainant and Felicia N. Norris had any interest in or title to said described premises, etc. The chancellor sustained the exceptions to the master's report and entered his decree accordingly, from which an appeal is prosecuted to this court.

ROGERS & MAHONEY, and CHILTON P. WILSON, for appellants Philip Falter *et al.*

WILLIAM D. BARGE, (JAMES H. LEWIS, Corporation Counsel, of counsel,) for appellant the City of Chicago.

EUGENE H. GARNETT, (GWYNN GARNETT, of counsel,) for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

The only question in dispute is whether or not the parcel of land described in the bill is private land belonging to the appellee Packard and his sister, or a public alley. Appellants, Philip Falter and others answering with him, apparently have no interest in or claim any title to the premises in dispute but own property abutting the property in question, and for that reason have joined in the appeal. No question was raised as to their right of appeal, and we therefore pass no opinion upon whether or not they are proper parties and have a right to appeal to this court. They have filed a brief and argument, and appellant the city of Chicago has filed a separate brief and argument, setting up what it considers its rights in the premises.

The evidence in the record discloses that in 1854 twenty acres of land were platted and laid out into lots and blocks by Messrs. McCaulley, Swift and Tyrrell. The plat as introduced in evidence shows the streets and alleys and lots and blocks and the strip in question. The strip was marked and indicated upon the plat in a manner different from the streets, alleys, lots and blocks, and opposite block 1 and block 4 the word "reserved" appears. It also appears that for a great many years after the tract was subdivided it was an open prairie and no attention was paid to the streets and alleys. The tract in dispute lay along the east side of the addition as laid out by McCaulley, Swift and Tyrrell and west of a strip that is shown on the map as Brand's subdivision. It appears from the record that no one paid any attention to the strip of land from 1854 until 1867, when it

was sold for taxes to the city of Chicago, and in 1869, pursuant to that sale, the city of Chicago conveyed it to one P. Hazard Smith, and on March 7, 1872, Smith conveyed it to his son, and in 1886 the latter conveyed it to Philip E. Stanley, and on March 29, 1886, and again on December 17, 1886, by two different deeds Stanley conveyed the premises to John A. Packard, who was the father of appellees, Packard and Mrs. Norris. It further appears that the county clerk of Cook county conveyed the premises to the city of Chicago in 1877 for taxes, and that the city of Chicago, by a deed dated December 3, 1885, conveyed the same to John A. Packard. On August 19, 1898, John A. Packard died testate, and by his will he devised the premises to his daughter, Mrs. Felicia N. Norris, and on August 28, 1901, she conveyed to the complainant, John E. Packard, an undivided one-half interest therein. As to the payment of taxes previous to the year 1885 upon the tract of land the record is silent, but shows it was sold for the taxes in 1866. But from the year 1885 to 1897 the taxes were levied and duly paid by John A. Packard, and from 1898 to 1900, at the time of filing this bill, the taxes were paid by Mrs. Norris. The total amount of taxes and redemption money paid by Mr. Packard and Mrs. Norris, exclusive of interest, as stipulated, is shown to be about $1650. Mrs. Norris claimed title by reason of the two deeds above mentioned to her father and payment of taxes for more than seven years.

It will be seen from what has already been said that by the plat of the subdivision no interest in the strip of land passed to the city or the public, and that by the plat the strip was not subjected to any servitude, and we can hardly see how any dominant estate was thereby created in any adjoining land.

It also appears from the record that the city of Chicago opened what is known as Henry street, which ran both east and west from this strip of land, across said strip. The record discloses that an ordinance for the opening of said street

across this strip was passed May 18, 1885, and that on August 21, 1885, the city of Chicago filed in the superior court of Cook county a petition in condemnation to open Henry street across this strip of sixteen feet. It is alleged in this petition that a part of the strip sought to be taken, similarly situated with the remainder, was at that time private property. That petition was prosecuted to a trial by jury, and, after a verdict, judgment was rendered for $200, to be paid to the owner of the part of the strip taken, as for private property taken for public purposes. Thereafter, on June 3, 1899, an order was entered in that proceeding compelling the city to pay to the clerk of the court the sum of $200, and authorizing the city to take possession of the part of the strip condemned. Later, on February 25, 1901, an order was entered therein in said cause, finding that at the time of his death, on August 19, 1898, John A. Packard was the owner of the part of the strip taken, and directed that the $200 be paid to John E. Packard, his executor, and to Felicia N. Norris, or their solicitors. Furthermore, it is stipulated that for the specific benefit derived from the opening of Henry street across said strip an assessment upon private property was made; that on the making and levying of such assessment the remainder of the sixteen-foot strip was assessed for such special benefits the sum of $200, and that for the benefits to the public the city of Chicago was also assessed the sum of $182.73. The assessment was collected in full and the damage paid for the property.

We can hardly see how the city of Chicago can be serious in its contention that the strip of land in question was dedicated to the public for an alley, after making a deed to the appellees' father and setting up the facts it did in the condemnation suit, and condemning a part of said strip, acknowledging the property in question at that time belonged to appellee Mrs. Norris. It is not claimed by either party that there was a statutory dedication of the strip of land in question for alley purposes, nor is it seriously contended that

there was a common law dedication, inasmuch as where land for a public street is claimed under common law dedication, it must clearly appear that it was the intention of the land owner to donate his land to the public and that the public has accepted the same. In the case of *City of Chicago* v. *Borden,* 190 Ill. 430, it is said (p. 442) : "In order to constitute a dedication at common law it is essential (1) that an intention on the part of the proprietor of the land to donate the same to the public use; (2) an acceptance thereof by the public be established by the evidence; and (3) that the proof as to these facts must be clear, satisfactory and unequivocal." There is no evidence whatever that there was any intention on the part of the proprietors of this land to donate the same to public use, but, on the other hand, the plat itself refutes this idea, the word "reserved" appearing on the strip as platted, in two different places, so it cannot be held that there was either a common law or statutory dedication.

It is, however, more seriously contended that there was a highway by prescription and user. The acquisition of an easement, such as a public right of way, by way of prescription arises from knowledge and the Statute of Limitations, and requires proof of user and enjoyment for at least twenty years, and the better authorities now hold that the running of the statute would raise merely a presumptive right or title which may be rebutted. (Washburn on Easements,— 4th ed.—sec. 126.) So that the twenty year user and enjoyment of the highway by the public is only *prima facie* proof of title or right to the easement, and the user or enjoyment must be adverse, exclusive, continuous and uninterrupted under claim of right, with the knowledge of the owner of the estate yet without his consent. *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561; *Dexter* v. *Tree,* 117 id. 532; *Illinois Central Railroad Co.* v. *City of Bloomington,* 167 id. 9; *Chicago, Burlington and Quincy Railroad Co.* v. *Ives,* 202 id. 69.

The case of *Rose* v. *City of Farmington,* 196 Ill. 226, was a bill to enjoin the closing and obstructing of a way across the north end of the city, which was used and enjoyed for upwards of twenty years. The subject of prescriptive rights and titles was discussed, and the court, in part, said: "It appears that appellee is the owner of a lot in the city of Farmington lying south and west of appellant's premises, and that appellant claims a right, by prescription, to use the north twelve feet of appellee's lot as a driveway to get to that part of her premises lying east of appellee's lot. Appellee was about to erect on its premises a building which would cover the whole of this strip claimed as a driveway by appellant. In order to establish a way by prescription the use and enjoyment of what is claimed must have been continued for a long period, to-wit, twenty years. It must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land in or over which the easement is claimed. The adverse use which will give title, by prescription, to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to the land in fee. (Washburn on Easements, 131; 19 Am. & Eng. Ency. of Law, 11; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561.) The adverse possession which is required to constitute a bar to the assertion of a legal title by the owner of it must include these five elements: It must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; and (5) under a claim or color of title. (*Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430.) * * * To create the presumption of a grant of the right of way, the circumstances attending its use must be such as to make it appear that it was established for the benefit of claimant, or that it was accompanied by a claim of right, or by such acts as manifested an intention to enjoy it without regard to the wishes of the owners of the land. The use must have been enjoyed under such circum-

stances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege or license, revocable at the pleasure of the owners of the soil. (*Dexter* v. *Tree,* 117 Ill. 532.) While the acquiescence of the owner may be shown by his acts, he is allowed to testify to what his intention actually was, to be considered in connection with all the other facts and circumstances in the case. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561.) In the case at bar the alleged way was merely a convenience for the owner of the lot north of it. It was not a necessity, for he could drive over his own lot to reach that portion lying east of appellee's lot. It is a matter of common observation that the public makes use of any open, unenclosed space which affords a more convenient way of reaching any given place than the regular way would, and it would be contrary to established legal principles, and to natural justice as well, to allow the public, under such circumstances and by the mere acquiescence of the owner, to acquire the permanent right of way."

The evidence in the record is very meagre on the subject of user of the particular strip of land by the public. Appellant Falter testified that he had lived in the immediate neighborhood for thirty years, and for about twenty-six years he knew the use that had been made of the sixteen-foot strip in question. He testified: "Well, it [the strip] has been used some twenty-six or twenty-seven years ago, people driving through there, but sure not in the shape it is now. It was just open prairie, you might say." His evidence is substantially the same as that of other witnesses who testified in reference to the use of the property for street purposes, and we deem it sufficient to say that the evidence does not support or establish the continued use, without interruption, for a period of twenty years. While it is true that for a great many years the strip was open and unobstructed, so that anybody could pass through it and teams and pedestrians have had ingress and egress to and from it, this is not sufficient, espe-

cially under the conditions as shown to exist by this record. The city of Chicago, which is the other real party in interest, having deeded the property to appellees within the last twenty years and within the two or three years next preceding the filing of the bill, brought condemnation proceedings for the purpose of condemning a part of the ground in question, and by its allegations and conduct in that proceeding acknowledged the appellees to be the rightful owners of the property. By selling the property to appellees' ancestors, by condemning a highway across the same, by taxing said premises from year to year and levying special assessments against the same, the city is estopped to now assert title to said strip. (*Shields* v. *Ross,* 158 Ill. 214; *Illinois Central Railroad Co.* v. *City of Bloomington,* 167 id. 9.) And besides, it is not shown from the record that the proper public authorities have exercised any authority and control over the property in question by superintending or keeping it in proper repair adverse to the owners of the land. In fact, it appears that the strip has never been wholly enclosed. It was not at the usual place for an alley, but was along the side of the addition and parallel with the lots as laid out by McCaulley, Swift and Tyrrell, and was between that addition and other vacant lands that would probably at some future time be laid out. Its use was not necessary for access to the properties of the addition of which it was a part, and whatever may have moved the original owners, at the time of platting, to have merely designated it as a reserve strip can only now be a matter of conjecture.

We think the record wholly fails to show such user, or user under such circumstances, by the public as would raise the presumption of a grant or give a prescriptive right.

We are satisfied with the decree entered by the superior court, and it is accordingly affirmed.

*Decree affirmed.*