JOHN JOBLING V. JAMES L. TUTTLE.

No. 14,922 (89 Pac. 699.)

SYLLABUS BY THE COURT.

1. EASEMENTS—*Executed Parol Agreement—Purchase of Servient Estate without Notice.* An easement consisting of the right to the free use of the water of mineral springs situated upon lands of another, which it is claimed arose by virtue of an executed parol contract with the former owner of the lands, cannot be asserted against a subsequent grantee where nothing appears of record indicating the existence of any servitude attached to the lands, and the grantee purchased without notice.

2. —— *Constructive Notice.* In order to furnish constructive notice of the existence of a servitude in lands there should be such a connection between the use and the thing used as to suggest to a purchaser that one estate is servient to the other. The servitude must be open, apparent and visible, so as to raise the presumption of notice, or the purchaser will not be bound, in the absence of actual notice.

3. —— *Knowledge of a Common Use—Notice of a Special Right Not Presumed.* In a suit to enjoin interference with an easement which it was claimed arose by virtue of an executed parol contract, entered into between the proprietors of mineral springs and the owner of a hotel situated on adjacent lands, providing that in consideration of the erection of the hotel the guests and servants should have, forever, the free use of the waters of the springs for drinking purposes, knowledge by defendant, who was a subsequent purchaser of the springs, to the effect that the guests and servants of the hotel had for years enjoyed the privilege in common with the public will not raise a presumption that defendant had notice of any special right of plaintiff's in the use of the waters.

4. —— *Prescription — Adverse Use Essential — License.* In order to acquire by prescription an easement in lands of another, consisting of the right to the free use of the waters of mineral springs situated thereon, the user must have been continuous, uninterrupted, actual, open, notorious, and adverse. Where it appears that during all the time there has been a surplus of water from the springs beyond what has been required by the owners, and the use relied upon was a use enjoyed in common with the public, which in no sense deprived the owner of his rights, it cannot be considered adverse, but will be held a mere license, which can never ripen into an easement.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed March 9, 1907. Affirmed.

### STATEMENT.

PLAINTIFF is the owner of a hotel at Geuda Springs, in Cowley county. He brought this suit to enjoin the proprietor of the Geuda mineral springs from denying to him and to the guests and servants of the hotel free access to, and use of, the mineral waters of the springs. His claim is that an easement had been acquired by himself and his predecessors in title to the free and uninterrupted use of the waters. As set out in the petition, this claim is founded, first, upon prescription; second, upon an executed parol contract.

The right by prescription, it was alleged, arose out of the continuous, open, notorious and adverse use of the waters of the springs for drinking purposes by the public and by the plaintiff's grantors under a claim of right for a period of more than fifteen years preceding the commencement of the suit.

The claim under an executed parol contract, as set forth in the petition, is that in 1887 the waters of the springs had acquired a widespread reputation for possessing medicinal qualities and had begun to attract visitors; that there were in the small town of Geuda Springs no adequate hotel accomodations, and no local demand sufficient to induce any one to erect a hotel attractive to visitors seeking rest and recreation at the springs; that the Geuda Springs Town and Water Company then owned the springs, and sold to S. L. Gilbert the ground upon which the plaintiff's hotel is located, and, in order to induce Gilbert to erect a large and commodious hotel, made a verbal agreement with him that if he would do so the company would grant to him and his successors, and to the guests and servants of the hotel, forever, the free and uninterrupted use of the mineral waters for drinking purposes; that in pursuance of the verbal agreement Gilbert built a hotel costing $18,000; and that since that time Gilbert and

Jobling v. Tuttle.

his successors in title, and the guests and servants of the hotel, had enjoyed the free use of the waters without interruption, until defendant, a short time before the commencement of the suit, had closed the springs and denied to plaintiff and the public access to the waters.

It was alleged that plaintiff purchased the hotel May 1, 1905, paying therefor the sum of $11,000, and that defendant had, on the 19th day of May, 1905, closed the springs and denied to plaintiff and his guests further use of mineral waters; that without the free and uninterrupted use of the waters and access at all times to the springs the hotel could not be operated except at great financial loss.

The answer alleged that on December 1, 1901, the defendant purchased the property upon which the mineral springs are located, paying therefor the sum of $18,750, at which time the public records showed no claim or easement in or to the springs by the public or the owner of the hotel property; that he had no notice, actual or constructive, of any interest or claimed easement, appurtenant or otherwise, in or to the mineral springs on the part of plaintiff's predecessors in title, and had no notice or knowledge that the public generally or the citizens of Geuda Springs or the proprietors, guests or servants of the hotel had ever used or claimed the right to use the waters of the springs; that he had no notice or knowledge of any parol agreement with regard to the erection of the hotel, as alleged in the petition, and had purchased in good faith, and would not have purchased had he known of any of the interests or rights claimed by the public or plaintiff's predecessors.

The reply, in addition to the general denial, alleged that the agent of defendant, who represented him in the purchase of the property, had notice of everything alleged in the petition.

The facts in the case appear from the findings made by the court, which follow:

"(1) That the town of Geuda Springs, Kan., was, in 1888, and now is, a city of the third class, possessing a population of from two hundred and fifty to three hundred and fifty inhabitants, and is located near the Geuda mineral springs, the use of the waters of which springs are in controversy in this action.

"(2) That from the year A. D. 1874 to May 29, 1905, the said Geuda mineral springs, located in Cowley county, Kansas, have at all times been open to the free and uninterrupted use of the public and of the citizens of the town of Geuda Springs for drinking purposes.

"(3) That the said town of Geuda Springs, since 1874, has been chiefly and largely kept up on account of the medicinal qualities of the water of said springs.

"(4) That in and during the year 1888 the Geuda Springs Town and Water Company, a duly organized corporation under the laws of the state of Kansas, was the owner of said Geuda mineral springs, comprising seven springs, possessing great medicinal and curative properties.

"(5) That in the year A. D. 1888 S. L. Gilbert visited the said town of Geuda Springs, and was desirous of erecting a hotel at said town near said springs which would accommodate the people visiting said springs for health and pleasure. And at said date the officers and agents of said town and water company had conversations with said Gilbert, and it was agreed by and between said officers and Gilbert that said town company would donate to said Gilbert lots upon which to erect a hotel, and also donate to Gilbert money and other property, all in the aggregate of the value of two thousand five hundred ($2500) dollars, in consideration of said Gilbert erecting said hotel, and at said time said officers and agents stated to said Gilbert that his boarders, guests and help at said hotel would have the privilege for drinking purposes of using said water of said springs at all times; that the said statement so made to said Gilbert and relied on by him for the use of said waters for drinking purposes was not reduced to writing; that said Gilbert did erect a three-story hotel, about three hundred seventy-five feet from said mineral springs, and at an aggregate cost of about $7000, including furniture and equipment; that the said Geuda Springs Town and Water Company donated

the said lots and paid cash to said Gilbert, all of the aggregate value of twenty-five hundred dollars; that said company caused to be conveyed to said Gilbert by a warranty deed the said lots, containing the ordinary covenants of general warranty; that there was nothing in said deed which in any wise referred to or pertained to the said Geuda mineral springs; and that, at said date, there were seven other lots in the same block, upon which the said hotel was thereafter erected, which said seven lots were situate between the lots conveyed to Gilbert and the said mineral springs.

" (6) That the hotels at Geuda Springs, prior to 1888, were sufficient to accommodate all persons desiring to visit Geuda Springs, except for pleasure and medicinal purposes.

" (7) That said S. L. Gilbert, who built the said hotel, which is now known as the Loomis hotel, and his successors in title and occupancy of said hotel property, down to near May 29, 1905, including all the guests, boarders and help at said Loomis hotel, used the water of said springs for drinking purposes without the objection on the part of the owners of said springs, which said use was in the same manner and to the same extent as the use made of said water by the general public.

" (8) That said Geuda Springs property, being the said mineral springs, was purchased by Anton Appel, Owen J. Martin, and James L. Tuttle, the defendant in this case, on or about December 1, A. D. 1901, for the agreed consideration of eighteen thousand, seven hundred fifty ($18,750) dollars.

" (9) That at the time the contract of purchase was entered into between Taylor and Reeves and said Martin, Tuttle and Appel to purchase said property, they paid $1000 of the consideration in cash, one-half of which was paid by Tuttle, and one-fourth of which was paid each by Martin and Appel; subsequently, about January 1, 1902, they paid $10,000 more of the purchase-price, and thereafter, about July 1, 1902, the balance of the purchase-price, $750, was paid in cash, and said Taylor and Reeves conveyed said mineral-springs property and other property to James L. Tuttle by a general warranty deed, with full covenants of warranty; that at the time of the payment of the $10,000, January 1, 1902, the said Taylor and Reeves placed Martin, Tuttle and Appel in possession and occupancy

of said property; that between the date of the payment of the $10,000 in January, 1902, and the final payment of the purchase-price in July, 1902, the defendant Tuttle purchased the interest of Appel in and to said premises, and about the month of October, 1902, said Tuttle purchased the interest of Martin in said property, and thereby became the absolute and exclusive owner of all said property.

"(10) That on or about November 15, 1901, said Owen J. Martin and said James L. Tuttle, defendant, visited and were present in the town of Geuda Springs looking over the property with a view of purchasing said Geuda mineral springs.

"(11) That said Anton Appel, one of the purchasers of said property, had visited said springs several times before said purchase, and had full knowledge that the public generally used said springs for drinking purposes.

"(12) That the said S. L. Gilbert and his successors in title to the said property, known as the Loomis hotel property, described in plaintiff's petition in this action, continuously used the waters of said mineral springs for drinking purposes from the date of the erection of said hotel Loomis, in 1888, down until the closing of said springs on May 29, 1905, believing that they had the right to such use for drinking purposes.

"(13) That for a period of about eighteen months immediately prior to the time the defendant, James L. Tuttle, Owen J. Martin and Anton Appel purchased said mineral springs, W. W. Spencer, of Geuda Springs, Kan., was the agent of Taylor and Reeves for the sale of Geuda Springs mineral water, carbonated and uncarbonated, in the city of Wichita, Sedgwick county, Kansas.

"(14) That the defendant, James L. Tuttle, owned the said springs for three years prior to May 29, A. D. 1905, and that, during said time, he never objected to the general public using the waters of said springs for drinking purposes, including the Loomis hotel, its guests, boarders and help.

"(15) That the said springs are located about twenty-three feet from the main street or public highway in said town of Geuda Springs, and about three hundred seventy-five feet from the said Loomis hotel.

"(16) That immediately prior to the purchase of said springs by Tuttle, Martin and Appel, said defendant,

Tuttle, and said Martin, with W. W. Spencer, visited said springs, and found the same open to the free use of the general public.

"(17) That in the year A. D. 1902 the defendant, James L. Tuttle, removed from over the said mineral springs the building that formerly and partly covered the springs, and then constructed over said springs a new two-story frame building, and closed up all the outside entrances to the said springs. And it then became necessary, after the new building was constructed, for all persons going to or visiting said springs to drink the waters from said springs, to enter the new building by means of a stairway leading to the room over the springs, and through doors opening at the head of the stairway, and then pass through said room over said springs and descend into the basement by means of a stairway in said room over the springs to obtain access to the springs, and, except as above stated herein, there was no way to get to the springs to obtain the waters thereof.

"(18) The defendant, James L. Tuttle, and all of the prior owners of the said springs, have used the waters from said springs for commercial purposes. And, for the purpose of procuring and gathering said waters to the end that the same could be utilized, said Tuttle has attached pumps to springs numbered 5 and 7, and when he is pumping or causes to be pumped the waters from springs 5 and 7 the water from said springs will be exhausted for hours during the day, from time to time.

"(19) That during all of the time since the said springs have been known there has been a surplus of water from said springs over and above what has been required by said former owners and Tuttle for commercial purposes, except during the time that springs numbered 5 and 7 are being pumped, yet, during the pumping of 5 and 7, there was and is an excess of water from the other springs.

"(20) That John Jobling, the plaintiff, prior to the time he purchased the said Loomis hotel, in May, 1905, from the Loomis Hotel Company, did not know that the said Loomis hotel had any special interest or right in said springs, nor that the guests, boarders and help of said hotel had any special interest in said springs, other than the right enjoyed by the general public for drinking purposes.

"(21) That the said defendant, James L. Tuttle, never lived in Cowley county, Kansas, and never visited said springs until November, A. D. 1901.

"(22) That John Jobling, plaintiff, prior to the purchase of the said Loomis hotel property, visited said springs in May, 1905, and saw and read a sign or card put up at said springs, which said card contained the following words, to wit: 'No water shall be carried away without the permission of James L. Tuttle.'

"(23) That, between the date of the deed to S. L. Gilbert to the said hotel property known as the Loomis, and the deed of the plaintiff, John Jobling, under which he claims title, there is a quitclaim deed in the chain of title, which said quitclaim deed was made by ——— to ———, and said deed is one of the deeds that supports the title of said Jobling to said Loomis hotel property.

"(24) That since the said date that the said Tuttle became the owner of said springs he has expended of his own means near the sum of $10,000 in repairs to the hotel on the springs property purchased by him, and in new buildings at said springs, including the rebuilding of the dam and other improvements on said property.

"(25) That at no time prior to the full payment of the purchase-price of said springs by said Tuttle, Martin and Appel, or prior to the delivery of the deed to Tuttle to said springs, did said Tuttle, Martin or Appel have any knowledge or notice that the Loomis hotel property had any special right or interest in and to the use of the waters of said springs other than or greater than the use enjoyed by the general public."

The judgment was for the defendant, dissolving the temporary injunction, and for costs. To reverse the judgment this proceeding in error is brought.

*Adams & Adams*, for plaintiff in error.

*J. Mack Love, Kos Harris*, and *V. Harris*, for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The first complaint we shall notice is of error in finding No. 25 made by the court. This finding in substance is that prior to purchasing the springs defendant had no knowledge or notice that the Loomis

hotel property had any special right to the use of the waters other or greater than that enjoyed by the general public. Plaintiff contends that this is not a finding of fact but a conclusion of law; that there was no issue raised by the pleadings in reference to what the rights of the public were in the use of the springs. The petition, however, alleges that for more than forty years the public had enjoyed the free and uninterrupted use of the waters of the springs; that the citizens of Geuda Springs had enjoyed the privilege from the time the town was established.

In his opening statement on the trial plaintiff's counsel stated one of the issues in the following language:

"The first proposition under which we claim the right to use these springs is that of prescription—that is, as a citizen of Geuda Springs; that the use of them vested in every citizen of that town, and has so existed for a period of thirty-five years. . . . We claim that by virtue of having that right as a citizen of Geuda Springs; that the defendant could not close the springs against them."

Plaintiff proved by several witnesses that the public had enjoyed the privilege for a great many years. The petition also alleged that defendant had notice of the special claim to the use of the waters by the proprietors of the hotel and their guests and servants. The answer contained a specific denial of such notice. The reply alleged that the agent of Tuttle in the purchase of the springs had actual and constructive notice of plaintiff's claim as set forth in the petition. The finding was therefore of facts well within the issues. Nor do we agree with the contention of counsel that it is wholly immaterial whether Jobling's rights were greater or less than those claimed by the public in general. As we shall attempt to show further on, this is one of the controlling facts in the case.

Did plaintiff acquire an easement in the use of the waters by grant, or, as alleged in the petition, by virtue of an executed parol contract? Finding No. 5 by the

court is that one of the inducements for building the hotel was the agreement on the part of the owners of the springs that the guests and servants of the hotel should have the use of the waters, but that this agreement was never reduced to writing. Finding No. 7 is that Gilbert, who built the hotel, and his successors in interest, including the guests and servants of the hotel, had used the waters of the springs without objection on the part of the owners, but that such use was enjoyed in the same manner and to the same extent as by the public generally. These findings, together with the finding that defendant at the time he purchased the springs had no notice of any right claimed by virtue of such agreement, present the further question whether an innocent purchaser of the springs can be bound by, or in anywise affected by, the fact that an agreement of the kind had been in fact made and relied upon by the original builder of the hotel.

The conveyance under which Tuttle took title to the land was the ordinary warranty deed, with no restrictive language. That percolating waters, such as these springs are, belong to the owner of the land as much as the land itself, admits of no doubt. (*City of Emporia v. Soden,* 25 Kan. 588, and cases cited at p. 608, 37 Am. Rep. 265. See, also, note to *Wheatley v. Baugh,* 25 Pa. St. 528, in 64 Am. Dec. 721.) In the case of *Armor v. Pye,* 25 Kan. 731, it was held that where the recorded deed made no mention of a right of way through lands a subsequent grantee took without notice. (To the same effect see *Cox v. Leviston,* 63 N. H. 283; *Taylor v. Millard,* 118 N. Y. 244, 23 N. E. 376, 6 L. R. A. 667; *National Exchange Bank v. Cunningham,* 46 Ohio St. 575, 22 N. E. 924.) It is contended by defendant that the claim set up by plaintiff is a non-apparent, non-observable, disconnected easement, and can only be binding on Tuttle by proof of actual notice. This, doubtless, was the conclusion arrived at by the trial court.

Plaintiff's hotel is situated on the block of ground

adjoining the tract upon which the springs are, but seven lots which do not belong to the hotel property intervene. The springs are disconnected from the dominant estate to which it is claimed they are appurtenant. There is no connection between the two to indicate that one is servient to the other. It has been held not indispensable to the existence and enjoyment of an easement that the dominant and servient estates should be in contiguity with each other. (Jones, Easements, § 5; *Witt v. Jefferson* [Ky.], 18 S. W. 229.) But there should be such a connection between the use and the thing used as to suggest to a purchaser that the one estate is servient to the other. (*Taylor v. Millard,* 118 N. Y. 244, 23 N. E. 376, 6 L. R. A. 667; *Simmons et al. v. Cloonan et al.,* 81 N. Y. 557; *Kuhlman v. Hecht,* 77 Ill. 570.) The servitude must be open, apparent, and visible, so as to raise a presumption of notice, or the purchaser will not be bound. (Jones, Easements, §§ 121-123.)

It is manifest that whatever right plaintiff and his predecessors in title had or claimed to the use of the waters of these springs, it was one which, as the trial court found, was enjoyed by the public generally, and possessed no distinctive qualities which made it apparent or observable to a purchaser without notice, or which put him upon inquiry, unless a purchaser was bound by knowledge of the use enjoyed by the public. The latter condition involves the consideration of the right claimed by prescription. It is not seriously contended by plaintiff that the record discloses any facts which defendant was obliged to take notice of which would have challenged his attention to the claim of the hotel proprietor of any special right to the use of the waters, except the fact that the public used the springs. The grant, therefore, resting in parol, was not sufficient to affect or bind defendant in the absence of actual notice.

Did plaintiff acquire an easement in the springs by prescription?

"To determine to what extent an adverse right can be acquired, it is necessary to consider the elements which must enter into the acquisition of such right. And in general it may be stated that to acquire such rights the user must be continuous and uninterrupted, actual, open, notorious, and exclusive." (2 Farnham, Waters & Water Rights, § 535.)

The same author says:

"If the use which was made of the water was one which the proprietor had a right to make, and it did no injury to the other person, it would not make the slightest difference how long it had continued. It was not until the use of the water became wrongful as to another or injured his rights that it became adverse so that its continuance would give a good title." (§ 535.)

It must, therefore, be adverse, and this character of the use has been defined to be a use under a claim of right known to the owner of the servient tenement— use such as the owner of an easement would make of it without permission asked or given, and disregarding entirely the claims of the owner of the land. (22 A. & E. Encycl. of L. 1194.)

It is well settled that the use of a watercourse cannot be adverse to the rights of another so long as there is an abundance of water to supply both. (*Faulkner v. Rondoni*, 104 Cal. 140, 37 Pac. 883.) By the nineteenth finding of the court it appears that during all the time the springs have been known there has been a surplus of water beyond what has been required by the owners. It is a contention of defendant, which is supported by this finding, and seems to be borne out by the authorities, that the use of the surplus waters of these springs by the public generally, or by plaintiff's predecessors in title, cannot be considered adverse so long as the use was in no respect a deprivation of the rights of the owner of the servient estate; in other words, the right to use merely the surplus waters flowing from the springs was a mere license, which could never ripen

into a prescriptive right. In *Brossard v. Morgan*, 7 Idaho, 215, 61 Pac. 1031, it was held that there was no adverse user of waters for the reason that each of the parties was using the water claimed by him, and there was an abundance for both. It was there said:

"As against the plaintiffs, the use of waters from Stockton creek lacked every essential element of adverse use and possession. There was no deprivation of possession or use as against plaintiffs, and no claim of adverse title asserted against them by defendant." (Page 219.)

In *Talbott v. Butte City Water Co.*, 29 Mont. 17, 73 Pac. 1111, it was said:

"To take the water when the prior appropriator has no use for it invades no right of his, and cannot even initiate a claim adverse to him." (Page 27.)

"When there is sufficient water in the river to supply all parties, there can be no such thing as adverse use of the water to start the statute of limitations running." (*Egan v. Estrada*, 6 Ariz. 248, 253, 56 Pac. 721.)

In *Hunter v. Emerson and Emerson*, 75 Vt. 173, 53 Atl. 1070, plaintiff sued to enjoin the use by defendants of a spring upon his land. Defendants claimed a right by prescription, and they and their grantors had used the waters for domestic purposes for more than forty years; they had also erected a fence around the spring. The court held that since it did not appear that the fence was built in the assertion of a right to the spring, or for its protection, or to exclude other persons from using the water, title by adverse possession could not be acquired by the building of the fence. The syllabus reads as follows:

"The open, notorious and continuous taking of water from a spring for a period of more than fifteen years, is permissive, and not adverse and under a claim of right, when it is consistent with another's title, though no express license is given."

To the same effect are the following cases, which, however, involve the right to the use of the waters of

streams: *Alta Land etc. Co. v. Hancock,* 85 Cal. 219, 24 Pac. 645, 20 Am. St. Rep. 217; *Cox v. Clough,* 70 Cal. 345, 11 Pac. 732; *Smith v. Logan,* 18 Nev. 149, 1 Pac. 678; *Wheatley v. Baugh,* 25 Pa. St. 528, 64 Am. Dec. 721.

When a right of way is claimed by prescription the rule is well settled that the user or enjoyment must have been adverse as well as continuous and exclusive. If permissive merely, it is a license, which can never ripen into an easement. (*U. P. Rly. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112; *Railway Co. v. Conlon,* 62 Kan. 416, 63 Pac. 432; *Insurance Co. v. Haskett,* 64 Kan. 93, 67 Pac. 446.) In *Falter v. Packard,* 219 Ill. 356, 76 N. E. 495, the rule is stated in substance as follows: The user must have been under a claim of right, with the knowledge of the owner of the estate, but without his consent.

It appears from the findings that at no time was any water appropriated by plaintiff's predecessors in title or their guests or servants, or by the public, that was needed or required by the owners. That such cannot be held an adverse use of water is, from the authorities we have cited, no longer open to controversy. (See, also, Farnham, Waters & Water Rights, §§ 537-540; *Union Water Company v. Crary,* 25 Cal. 504, 85 Am. Dec. 145.)

Moreover, it appears that defendant and the former proprietors of the springs were using the water from some of the springs for commercial purposes, and that during the time defendant so used it the supply from these particular springs would be exhausted for five or six hours at a time. Thus defendant was asserting and exercising a right to the use of all the waters of two of the springs adverse to any right claimed or enjoyed by plaintiff during a portion of the period plaintiff claims to have gained his right by prescription. In this connection finding No. 17 is important, from which it appears that in 1902 defendant constructed a new building over the springs, and closed the entrances

so that it became necessary for all persons visiting the springs or using the waters to enter and pass through doors and up and down stairs of the building belonging to defendant. It is apparent from the findings that plaintiff's use of the springs was permissive only and at all times consistent with the owner's rights—never adverse, and that however long continued it could not ripen into an easement.

A considerable part of plaintiff's brief is taken up with a discussion of the testimony and the contention that some of the findings of fact are contrary to the weight of the evidence. An examination of the entire record convinces us that every finding is sustained by competent evidence, and we are therefore not at liberty to disturb any of them.

The findings, we think, compel the affirmance of the judgment. It is therefore affirmed.