[Civ. No. 205.   Third Appellate District.—May 23, 1906.]

## LOUIS DONDERO and ROSALIE FERGUSON, Respondents, v. JOHN F. O'HARA and JAMES J. O'HARA, Appellants.

EJECTMENT FOR DITCH—PRIOR POSSESSION—TRESPASSERS—OUTSTANDING TITLE.—In an action of ejectment to recover the possession of a water ditch, where the plaintiff does not rely upon a paper title, but only upon prior, actual, peaceable possession of the ditch, defendants, who are trespassers upon plaintiff's possession, cannot justify their acts by showing that the title is outstanding in a third person.

ID.—USE OF DITCH BY PERMISSION OF PLAINTIFF'S GRANTOR—TRESPASS.—Where defendants used the ditch in controversy by permission of plaintiff's grantor, when they asserted a right in it as against plaintiffs, who were prior possessors thereof, they became trespassers.

ID.—POSSESSION UNDER COMMON SOURCE.—Where the possession claimed by both parties was from a common source, the prior possession of plaintiffs showed a better title than that of the subsequent possession of defendants obtained under the same source.

ID.—EQUITABLE DEFENSE—PLEADING—INSUFFICIENT PROOF.—A defense that the plaintiff's grantor obtained the right to construct the ditch across the land of their father on condition that he was to use it and run water through it, without limit, and that defendants were his tenants, is an equitable defense that should have been pleaded; but held that though the defense was allowed to be proved, without being pleaded, it was not sufficiently substantiated by the evidence.

ID.—ADMISSION OF OUSTER.—Where the answer by the defendants denied only plaintiffs' title and right of possession, and in a cross-complaint they alleged possession in themselves, upon which no issue was taken, the ouster of plaintiffs by the defendants was admitted.

Id.—Evidence—Agreement—Fixing Water Rights.—An agreement fixing water rights between plaintiffs and third parties, made in connection with the construction of the ditch in question, and affecting a ditch at the upper end of plaintiff's ditch, taking water from a creek through the ditch to be constructed, and in consideration of the construction was admissible, and if not, was harmless.

Id.—Evidence of Possession—Assessment-roll and Payment of Taxes.—Evidence of the assessment-roll, and the payment of taxes assessed upon the ditch, was admissible as tending to show acts of possession.

Id.—Evidence—Mining Partnership—Permission to One Partner to Use Ditch.—A mining partnership having been shown, evidence of permission given by plaintiffs' grantor to one of the mining partners to use the ditch for water for the purposes of the partnership business was properly admitted under subdivision 5 of section 1870 of the Code of Civil Procedure, without proof that the permission was communicated to the other mining partner.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. R. C. Rust, Judge presiding.

The facts are stated in the opinion of the court.

J. P. O'Brien, and A. A. Smith, for Appellants.

F. W. Street, for Respondents.

CHIPMAN, P. J.—Ejectment. Plaintiffs had judgment from which and from the order denying their motion for a new trial, defendants appeal. The cause was tried by the Honorable R. C. Rust, judge of the superior court of Amador county, presiding at the trial by request of the judge of the superior court of Tuolumne county. We find printed in the brief of counsel for respondent the following opinion, filed in the case by the presiding judge, which seems to us to clearly present the grounds upon which the decision rests, and satisfactorily meets the principal points now made by appellants: namely, that the evidence is insufficient to justify the findings and that the decision is against law.

"This is an action of ejectment brought by the plaintiffs to recover the possession of a certain water ditch in the complaint fully described.

"The complaint is in the usual form. The answer denies that plaintiffs are the owners or entitled to the possession of the water ditch described in the complaint, and denies that defendants, without right or title, entered into the possession of said ditch, or ousted or ejected the plaintiffs therefrom, and defendants, without right or title, entered into the possession thereof from the plaintiffs.

"Defendants by way of cross-complaint allege that they are the owners of a certain water ditch formerly known and called the 'Ophir Water Ditch and Flume,' and formerly known as and called 'Woods Ditch,' and sometimes called 'Smith's ditch' and particularly described in the cross-complaint, and allege that it is the same ditch described in plaintiff's complaint. That plaintiffs claim to have some interest and estate in and to said water ditch and premises adverse to defendants; that the claims of plaintiffs, and each of them, of, in and to said water ditch and property is without any right whatsoever, and that said plaintiffs have not, and each of them has not, any estate, right, title, interest or claim whatsoever of, in or to said water ditch and property or any part thereof, and follow with the usual prayer for a decree quieting defendants' title thereto.

"The evidence at the trial showed without dispute that there had been a ditch known as the 'Smith and Wood Ditch' conveying water along about the same line as the ditch now claimed by the plaintiffs, but that it had been abandoned for a period of more than twenty years.

"That John Ferguson, the grantor of plaintiffs, constructed a new ditch from a point on the east side of the road leading from Sonora to Columbia that runs parallel with Woods Creek a distance of 200 or 300 feet, and constructed it across the said road before the ditch entered the lands of James O'Hara, Sr., the father of defendants. That John Ferguson obtained permission of said James O'Hara, Sr., to dig his ditch across the lands of said O'Hara, Sr., provided he made use of the old Smith and Woods ditch line as the site for the construction of the ditch. Said John Ferguson constructed his ditch along this line, and on to the Dane gardens in the town of Sonora, where the water was used for irrigating and running a still. And that the ditch

had been so used continuously each year ever since its construction, a period of more than ten years.

"James O'Hara, Sr., one of the defendants, worked upon the construction of the ditch for said John Ferguson, and was paid by him for his work. James O'Hara, Sr., the owner of the land, was paid by John Ferguson for removing dirt excavated in digging the ditch from his land to the county road.

"Sometime after the ditch was constructed by John Ferguson, James O'Hara, Sr., obtained permission from John Ferguson to wash a dump at his incline tunnel with water from this ditch, and used the ditch for this purpose on two different occasions for a period of two or three months each. Afterward James O'Hara, Jr., obtained permission from John Ferguson to convey water to his water wheel at the incline tunnel on his father's land and which he was operating under a lease from his father. During all of this time John Ferguson was conveying water through the ditch to the Dane garden and to other places in Sonora and selling it.

"Other parties also used water through this ditch without paying for it, but always after asking and receiving permission from John Ferguson and cleaning out and repairing the ditch for him. John Ferguson and his partner Dondero paid the taxes assessed against the ditch each year and exercised other acts of ownership over it.

"After this evidence was introduced on behalf of plaintiffs, defendants abandoned their cross-complaint and endeavored to show title in a third party, viz., their father James O'Hara, Sr., upon the principle of law that in actions of ejectment plaintiff must recover upon the strength of his own title and not upon the weakness of that of his adversary.

"Plaintiffs contend that defendants cannot invoke this rule for the reason that plaintiffs are not relying upon a paper title, and that this rule only applies to those claiming under a paper title.

"I am of the opinion that this contention of plaintiffs is correct, for I find the rule to be that in an action of ejectment, brought solely on the prior actual possession of the plaintiff, the defendant being a trespasser, the latter cannot justify the act by showing title to be outstanding in a third person.

"*Bird* vs. *Lisbros,* 9 Cal. 1, [70 Am. Dec. 617].

"*Carlton* vs. *Townsend,* 28 Cal. 219-224.

"*Niagara M. Co.* vs. *Bunker Hill M. Co.,* 59 Cal. 612.

"*Foot* vs. *Murphy,* 72 Cal. 104, [13 Pac. 163].

"*Kitts* vs. *Austin,* 83 Cal. 167, [83 Pac. 167].

"The preponderance of the evidence clearly shows to my mind that defendants were using the ditch in controversy under the permission of plaintiffs' grantor, John Ferguson, and that when they asserted a right to the ditch as against plaintiffs, who were prior possessors, they became trespassers.

"*Hutchinson* vs. *Perley,* 4 Cal. 34, [60 Am. Dec. 576].

"*Hawxhurst* vs. *Lander,* 28 Cal. 331.

"*Zilmer* vs. *Gerichton,* 111 Cal. 77, [43 Pac. 408].

"Defendants endeavored to avoid the force of this rule by the introduction of evidence given by themselves and their father James O'Hara, Sr., that John Ferguson obtained the right to construct the ditch on and across the lands of James O'Hara, Sr., on condition that he should have the right to use the ditch, and to run and use water through it, and that defendants, as tenants of James O'Hara, Sr., had permission from him to use the ditch.

"Plaintiffs objected to this testimony on the ground that this was an equitable defense and that defendants had not plead it and therefore could not avail themselves of it, and in support of the objection cite the following cases:

"*Cadiz* vs. *Majors,* 33 Cal. 228.

"*McCauley* vs. *Fulton,* 44 Cal. 362.

"*Hicks* vs. *Lovel,* 64 Cal. 18, [49 Am. Rep. 679, 27 Pac. 942].

"*Arguello* vs. *Bours,* 67 Cal. 450, [8 Pac. 49].

"These cases, in my judgment, support the objection, but as two of defendants' witnesses had testified to that effect without objection I permitted the others to testify and overruled the objection.

"James O'Hara, Sr., thereupon testified to a conversation he had with John Ferguson in the presence of his two sons, the defendants in this action, at the time the ditch was dug, that John Ferguson should have permission to dig his ditch over the land of said James O'Hara, Sr., and that said James

O'Hara, Sr., should use the ditch and water without any limit whatever, as to time or place or quantity. His sons, the defendants in this action, also testified to this conversation.

"John Ferguson is dead, and I am deprived of the benefit of his version of this conversation and therefore must look to the surrounding circumstances, and to the reasonableness of the agreement as testified to by the defendants and their father.

"Defendants upon cross-examination testified there was no water for stock on their father's land until John Ferguson dug this ditch.

"That no claim was ever made by defendants' father to the ditch until the trial of this action. Defendants themselves never mentioned to anyone that they claimed any rights in the ditch until the trial, except that they testified on cross-examination that they informed their counsel of their claim when they first employed him. But the fact that this equitable defense was not plead would lead me to believe they are mistaken in this particular.

"It was generally known as John Ferguson's ditch and everyone that used it first obtained permission from John Ferguson.

"The defendants' leases from their father do not mention the ditch or water, but refer entirely to the mine. And one of the parties to the lease, A. R. Elsbury, testified that his brother, one of the lessees of the mine before him, told him that he had obtained permission from John Ferguson to use the ditch to convey water to the wheel.

"As to the reasonableness of the agreement or understanding at the time of the conversation testified to by the O'Haras between their father and John Ferguson, it seems to me to be extremely unreasonable to suppose that John Ferguson would employ men and spend money in the construction of a ditch to convey water to Dane garden and vicinity of Sonora for the purposes of irrigation and for sale, and then enter into such an agreement as that testified to by defendants and their father that practically gave Ferguson no water at all, and the O'Haras the right to use all the water the ditch would carry at any point, and for any purpose and at any time.

"All these circumstances convince me that ꞌthe O'Haras' recollection of this agreement or conversation that occurred so long ago is faulty and that the only reasonable interpretation of it is that O'Hara, Senior, should use the water for his stock and on the occasions mentioned for washing his dump, and that the defendants and Elsbury had permission to use it for the wheel.

"And that the evidence produced by the defendants would not substantiate this defense if they have the right to be heard upon it.

"Defendants' denial of plaintiffs' title and right of possession is an admission of the ouster of plaintiffs by them.

"*Busenius* vs. *Coffee*, 14 Cal. 91-93.
"*Woodworth* vs. *Knowlton*, 22 Cal. 164.
"*Salmon* vs. *Wilson*, 41 Cal. 595.

"Plaintiffs' grantor constructed the ditch and he and his successors in interest have been in the occupancy and possession thereof ever since until the ouster by defendants last year, and such possession and occupancy ripened into a perfect title and entitles them to a decree of this court as prayed for in the complaint.

"Civil Code, Secs. 1006 and 1007."

Plaintiffs' claim, as against defendants, need not rest upon a right of prescription nor upon paper title; they may and do claim by occupancy. The possession under which they claim was taken for the purpose of constructing a ditch and was taken by leave of the owners of the land over which the ditch ran, including O'Hara, Sr. "Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will or succession" (Civ. Code, sec. 1006); and defendants claimed by neither of these latter sources of title; their evidence of an agreement with the builders of the ditch, by which it was claimed that they had the right to the use of the water, was not accepted by the court as satisfactory. Defendants denied ownership or right of possession of plaintiffs, or either of them; denied that they, "without right or title, entered into possession of said ditch, or ousted or ejected the plaintiffs therefrom, and they deny that the defendants

now unlawfully withhold possession thereof from the plaintiffs.'' The cross-complaint of defendants averred that they were the "owners of and in the possession of and entitled to the possession" of the ditch in question. The pleadings are verified. The alleged possession of defendants was subsequent to that of plaintiffs, and the possession under which they claim was through O'Hara, Sr., a source common to both plaintiffs and defendants. It was only necessary for plaintiffs to show a better title through this common source than defendant was able to show through the same source. (10 Am. & Eng. Ency. of Law, 491, citing *Spect* v. *Gregg*, 51 Cal. 198; *Frink* v. *Roe*, 70 Cal. 296, [11 Pac. 820].) Plaintiffs were called upon to prove only that they were entitled to possession and this was sufficient, unless defendants showed a prior possession or title which they failed to do. The court found that plaintiffs "were seised in fee and possessed of and entitled to the possession of all that certain water ditch," etc., and it is claimed that there is no evidence to sustain this finding. It was only necessary for the court to find possession, or right of possession, and this would support the judgment, even though it be conceded that the evidence did not justify the finding that plaintiffs were "seised in fee" within the full meaning of an estate in fee defined by section 762 of the Civil Code. The answer admits the ouster by its form of denials. It denies only that defendants "without right or title" entered into possession. It also puts in issue plaintiffs' title and right of possession, and their cross-complaint avers possession in defendants which is not denied by plaintiffs, and this has been held sufficient proof of ouster. (*Salmon* v. *Wilson*, 41 Cal. 595.)

Appellants cite numerous cases to the point that at the trial the defendant could defeat the action by showing title or right of possession in some third person. This is the rule ordinarily, but is not the rule where plaintiff claims under a prior actual peaceable possession as against a mere trespasser on the land or one claiming only under a later possession. (See cases arising in this and other states, cited in 10 Am. & Eng. Ency. of Law, pp. 486, 487.)

Certain assignments of errors in the admission of evidence remain to be noticed.

A certain agreement was offered in evidence and admitted between John Ferguson, Rosalie (his wife), John P. Dart and M. B. Harmin, first parties, and Louis Dondero, second party, concerning certain water rights to the water of Woods creek and thereabouts and certain ditches leading in part along the course of the ditch in question. The objection of defendants was that John Ferguson had not been shown to be the owner of any ditch in controversy, and that the agreement refers to the Jaynes Blue ditch, which is not in controversy. As near as we can discover from the evidence the Jaynes Blue ditch was at the upper end of the ditch in question and above the O'Hara land. It seems to have been a part of the old system for taking water from Woods creek. This agreement was made in connection with the construction of the ditch in question, and in some degree was intended to fix the rights of the parties to the water conveyed through it. One of the parties claimed the Jaynes ditch and was to convey it in consideration of the construction of the ditch in question. It seems to us that the evidence was inadmissible, and if not it was harmless.

The assessment-roll, showing that the ditch was assessed to Ferguson and Dondero, was admitted; and also the testimony of Dondero that the taxes were paid by either himself or Ferguson—sometimes one and sometimes the other. The objection was that the witness "could not positively testify whether Mr. Ferguson paid them except by hearsay." Dondero testified: "Sometimes I would pay the taxes and sometimes Mr. Ferguson would pay the taxes. I don't know who paid them. I don't know whether he paid them; but sometimes I paid them, and sometimes he paid them, and then we would come to a settlement afterward." There was no objection that the receipts were the best evidence, and should have been produced or their loss explained. Dondero testified that he paid the tax sometimes, and the objection to this testimony was properly overruled. As to taxes paid by Ferguson, he testified that he did not know except through settlements with him. As tending to show acts of possession the assessment-roll and payment of taxes by Dondero were admissible and what Dondero testified as to Ferguson was harmless.

3 Cal. App.—41

Carl Ferguson was permitted to testify against objection of defendants that his father gave permission to defendant James O'Hara, to use the ditch. The permission was given to Eugene Elsbree, who was the mining partner of O'Hara in the O'Hara mine, where the water was used. The objection was that it must be shown that the permission was communicated to O'Hara, otherwise it would be inadmissible. The partnership being shown, and the use of water being connected with the partnership business, the evidence was admissible under subdivision 5, section 1870 of the Code of Civil Procedure.

Under the same section of the code, the testimony of A. E. Elsbree was admissible.

The judgment and order are affirmed.

McLaughlin, J., and Buckles, J., concurred.