## UNITED STATES v. TUJUNGA WATER & POWER CO.

(District Court, S. D. California, S. D. March 24, 1927.)

1. **Waters and water courses ⚖➡4—Statute authorizing acquisition of water rights in public lands held intended to aid irrigation and other projects (Comp. St. §§ 4934–4936).**

Purpose of Act March 3, 1891, §§ 18–20 (Comp. St. §§ 4934–4936) authorizing canal and ditch companies to acquire water rights in public lands, subject to forfeiture if work is not completed within five years, was to aid irrigation and other projects, to render dry lands productive, and also to supply communities, either thickly or sparsely inhabited, with water for domestic and yard irrigation.

2. **Waters and water courses ⚖➡26—Company making substantial improvements for supplying water acquires rights in public lands which may not be disturbed (Comp. St. §§ 4934–4936).**

If water company, acquiring rights in public lands within the general plan outlined by maps of location approved by Interior Department and filed by it under Act March 3, 1891, §§ 18–20 (Comp. St. §§ 4934–4936), makes substantial improvements of practical use to it in its business of supplying water to inhabitants of a particular territory, requirements of the statute are satisfied, and rights obtained may not be disturbed.

3. **Waters and water courses ⚖➡26—Company constructing dam, constituting adjunct to irrigation system, held to acquire rights not subject to forfeiture for nonconformity to map (Comp. St. §§ 4934–4936).**

Where water company, at cost of $50,000, constructed concrete dam in government forest reserve under permit granted under Act March 3, 1891, §§ 18–20 (Comp. St. §§ 4934–4936), 35 feet high from bedrock to level of bed of stream, effect of which was to seal canyon against percolating water in gravel bed without impounding water in pool, and dam and tunnel built through mountain were used as a practical adjunct to company's irrigation system, *held*, that government was not entitled to forfeit company's rights because of failure to complete dam to height shown by maps filed.

In Equity. Suit by the United States against Tujunga Water & Power Company. Decree for plaintiff in part, and in part for defendant.

Samuel W. McNabb, U. S. Atty., and Donald Armstrong, Asst. U. S. Atty., both of Los Angeles, Cal., and H. P. Dechant, Solicitor of the Department of Agriculture, of Washington, D. C., for the United States.

Lyle H. Adams, and Wm. M. Smith, both of Los Angeles, Cal., for defendant.

JAMES, District Judge. This action is brought by the United States to secure a decree canceling rights to maintain reservoirs, ditches, tunnels, and conduit lines on public lands comprised within a forest reserve in the county of Los Angeles, state of California. The Act of Congress of March 3, 1891, §§ 18–20 (Comp. St. §§ 4934–4936; 8 Fed. Stats. Ann. pp. 803, 805), authorizes the acquiring of rights of this kind in the public lands by canal and ditch companies, for irrigation purposes, and the same act provides that, where any section of the contemplated

work is not completed within five years after location made by the filing of maps, and securing certificates of approval, all rights shall be forfeited as to any section of "said canal, ditch or reservoir, to the extent that the same is not completed at the date of the forfeiture."

In September, 1901, Samuel Merrills obtained approval of an application accompanied by a map of location covering a contemplated system of water conduits with a great number of storage reservoirs in the Tujunga Canyon. This contemplated system was of many miles in extent. One Wilcox, in 1905, obtained like approval of an application to construct a conduit line and reservoir, which application covered the final or lower section of the work indicated upon the prior map of Merrills. On February 25, 1916, this defendant, which had acquired by transfer the rights of prior locators, filed a map of definite description, covering what was designated as reservoir No. 1, being at the same location indicated for similar work on the Wilcox and Merrills maps. There were other maps of location filed at different times, covering intended work described under the extensive plan indicated on the Merrills map, but there was no contention at the trial that any section of that work had ever been commenced. Because of the fact that the time has long passed when work could be legally done to perfect rights claimed under the latter locations, the decree, of course, must be in favor of the government.

The issue is narrowed, therefore, so as to require a decision only as to whether the defendant and its predecessors, by the work that they caused to be performed under the permission given by the Interior Department, upon reservoir No. 1 and the contemplated tunnel and conduit system leading therefrom, created a practical storage place for the gathering of water and a means to conduct the same across the public lands, as their application promised they would do. All the witnesses agree that from reservoir site No. 1 a conduit line was constructed which consisted in part of an open ditch and in part of a closed pipe, exposed in places and covered in others; that this conduit led to an intake gallery located about 2½ miles below the site of the reservoir and outside the reserve; and that through this intake gallery water was and still is being drawn for the supply of several communities lying below the base of the mountain. There was not constructed a reservoir at site No. 1 which could be made to show a collection of clear water. This site lay at the bottom of the canyon and in a water course through which a mountain stream traveled throughout a considerable part of the year. The bottom of this canyon was filled with gravel and sand, bed rock being found at a distance of about 35 feet below the surface. The locators at the place selected for reservoir site No. 1 excavated to bed rock and constructed a concrete dam 120 feet long on top, 35 feet high, 24 feet thick at the ends, and 20 feet thick in the center. They did this at a cost in excess of $50,000. When completed, the upper surface of the dam was practically on a level with the sand and gravel constituting the bed of the stream, which was immediately above it. After the dam was built, the stream traveled in its old course directly across the top of the dam, and no body of water was impounded or collected back of it, except in the manner which will be hereafter described. A tunnel was also built through the solid rock of the mountain, mainly about 6 feet by 7 feet in dimension and for a distance of about 600 feet; its mouth being back of the concrete dam, and the elevation of its floor being practically that of the top of the dam. The terminus of the tunnel was below the dam, and at a point where the conduit for the conveyance of the water that has been referred to had its commencement.

It will appear from these facts that the dam, with its top no higher than the floor of the tunnel, would turn no water into the tunnel. In times of high water, irrespective of the effect of the dam, water might enter the tunnel, and the evidence was that it did. The defendant's principal witness testified that the system, including the dam, tunnel, and conduit, was used as a practical adjunct to the irrigation system of the water and power company. This witness testified that in the winter season so much water ran free in the canyon that the supply pipes of the defendant were kept filled through the intake located below and outside the reserve, without the aid of the conduit from No. 1 site. He testified that during the dry summer season, in order to maintain the supply of water (for which the demand was constantly increased by reason of the rapid settlement of the territory) a plank or sand bank was placed across the 20 feet width of the concrete dam; that by this means water flowing in the canyon bed was collected behind the dam until it rose to a sufficient height to flow through the tunnel and into the conduit line.

It is the government's position that because, in a detail of the proposed dam shown on the map filed by the defendant designat-

ing and describing reservoir No. 1, the height of the dam was represented as 115 feet, which height it never reached, and as the dam did not have the effect of impounding the water, the work remained in an uncompleted state.

[1, 2] The purpose of the act of Congress was quite plainly to aid irrigation and other projects, having the main end in view to render dry lands productive. The supplying of communities, either thickly or sparsely inhabited, with water for domestic and yard irrigation, is fairly within the main object to be accomplished. It is not that the government is interested in having constructed conduits and storage reservoirs of the exact and particular kind contemplated by the parties who make locations on Government land; if, within the general plan outlined by the maps of location, substantial improvements are made, which are of practical use to an irrigation company in its business of supplying water to the inhabitants of the particular territory, the requirements of the statute are satisfied and the rights obtained may not be disturbed.

[3] The dam at reservoir site No. 1, as has been hereinbefore noted, was a well-made, substantial structure. It was built from the bed rock of the canyon and sealed the canyon against percolating water in the gravel bed, so that such water, if not sufficient in quantity to flow on the surface, would be impounded in the gravel back of the dam, and thus raised until it flowed over the top of the structure. In times of drought there was no water flowing in Tujunga creek in the stream bed, although it is quite plain that there would be percolating water through the gravel above the bed rock. The dam performed its function to a practical extent, and was a real improvement in the system for the collection of water. The claim of the government is not that the dam, tunnel, and conduit were so seldom made use of as to show a legal abandonment of the locations, but solely that the improvement as planned and shown by the maps had never been completed. From what has been stated herein, this claim cannot be maintained in the face of the facts as they have been adverted to.

Hence I conclude that, as to the location of the reservoir and dam site known as No. 1 and the tunnel, and conduits leading therefrom to and across the boundary of the government land, defendant is entitled to the decree. As to all other locations for reservoir sites and conduits, tunnel, or other work contemplated by the locators as shown on the different maps introduced in evidence by the government, the United States shall have a decree forfeiting all rights therein claimed. The government will recover its costs.