[Civ. No. 14809.   Second Dist., Div. One.   Feb. 28, 1946.]

MYRTLE D. A. PECK, Respondent, v. FRANCES HOWARD
et al., Appellants.

Charles E. Hobart for Appellants.

James P. Clark for Respondent.

WHITE, J.—This is an action to quiet title to a pipe line and the water flowing therein and to enjoin defendants from interfering with said pipe line and from diverting or using said water. The trial court found in favor of the plaintiff and from the judgment which followed, defendants prosecute this appeal, urging (1) that the evidence does not support the findings and judgment that respondent and her predecessors in interest owned the right of way across the land of appellant, Frances Howard; (2) that the deed of Almeda T. Gookins created a water right appurtenant to said appellant's land and the court erred in refusing to admit said deed in evidence; (3) that a water right had been acquired by user and prescription which was conveyed with the land to the said appellant; (4) that the court erred in its rulings relating to admission of evidence; (5) that appellants are suffering irreparable injury by reason of the injunction granted by the trial court "cutting off their water from this pipe line before final judgment in the cause."

The complaint alleges that since July 6, 1932, plaintiff has been and is the owner of a parcel of land situate in Los An-

geles County, being a portion of Section 16, Township 8 North, Range 16 West, S.B.M., hereinafter referred to as section 16; that in addition she is also the owner "of a certain pipe line, right of way for the same and water rights" running from section 16 into the hills in the vicinity thereof for a distance of five miles, which pipe line and right of way pass through the land of defendants, being the northeast quarter of the southeast quarter of section 31, Township 8 North, Range 16 West, S.B.M., and hereinafter referred to as section 31; that plaintiff and her predecessors in interest for a period of 40 years have continuously maintained said pipe line as a means of conveying the water from certain springs at its head and have continuously used and appropriated all of the water flowing from the springs, and that "the title to the land for which said water was appropriated and the pipe line and water rights, have been assigned by mesne conveyances to the plaintiff herein"; and that she is the owner in fee simple of said pipe line, rights of way and water rights and of the right to use on section 16 all of the water flowing from said springs. It is further alleged that defendants without any right whatsoever "claim and assert some right, title or interest in and to the water flowing through said pipe line and are unlawfully and wrongfully diverting said water from said pipe line and depriving the plaintiff of the use and benefit" thereof. Plaintiff prays for temporary and perpetual injunctions; that her title to the pipe line, right of way and water be quieted as against the claims of defendants and for $500 in damages.

A general and special demurrer to said complaint having been overruled, defendants answered admitting plaintiff's ownership of the pipe line and certain water rights appurtenant thereto but alleged a right in themselves "to the use of water from the pipe line for domestic purposes" as reserved in a deed dated September 3, 1904, from Almeda T. Gookins, to Henry Hatch, predecessor in interest of plaintiff. The answer then alleges upon information and belief that since 1894, "the said Almeda T. Gookins and her successors in interest . . . including these defendants, have actually diverted and used water flowing through and from said pipe line for domestic uses and purposes, including the use for irrigating a family garden not exceeding 400 square feet, and a small family orchard not exceeding twelve trees in all, and for watering animals; that said use is under a claim of right as reserved by the said Almeda T. Gookins in said deed . . . and

also under a claim of right for domestic use as acquired by constant and continuous use for the statutory period and under the customs and laws of the State of California and the United States of America''; that said uses ''have been open and notorious, within the plain sight and view of plaintiff and her predecessors in interest'' and with her knowledge; further that said uses were hostile and adverse to the claim of plaintiff and have ''diminished the flow of water from said springs and in said pipe line.''

Defendant Frances Howard also filed a cross-complaint herein to quiet title, for declaratory relief and for an injunction in which it was alleged that on February 23, 1923, said Almeda T. Gookins conveyed section 31 by grant deed without any reservations to Helen Cherbbonno, who on August 22, 1925, transferred the property to Dana R. Weller without any reservations and the latter in turn conveyed said property to cross-complainant Howard ''subject only to a right of way for pipe line purpose; but without any reservations.'' It is also alleged that said Almeda T. Gookins and her successors in interest including said cross-complainant, ''have actually diverted and used water flowing through and from a pipe line crossing cross-complainant's land above mentioned for domestic uses and purposes''; that said use was made under claim of right, as reserved in said deed; and ''also under a claim of right for domestic use as acquired by constant and continuous use for the statutory period; has been open and notorious; hostile and adverse, and that cross-defendant's claims are without right and that she has no right in said water rights of the cross-complainant for domestic purposes.

Cross-defendant Peck's answer to the cross-complaint alleged that in July, 1894, section 31 was unsurveyed and unoccupied government land when Henry Hatch located and appropriated the said springs situated in the hills immediately south of section 31; that said Hatch completed the pipe line in July of 1895 and carried water by means thereof over a portion of said section 31 to his ranch on section 16; that said Hatch ''was the owner of a right of way over said section 31 where the pipe line is now situated, long prior to the time that said Almeda T. Gookins moved onto that part of said section 31 which she afterward took up as a homestead''; and that when the latter made the purported writing, she ''did not own and had no right, title or claim in or to the right of

way then occupied by the pipe line of said Henry Hatch, and that on the contrary, the said Henry Hatch was then the owner of and in possession of said right of way.''

Among other things, the trial court found:

''III. That plaintiff and cross-defendant is and has been since July 6th, 1932, the owner of and in possession of a certain pipe line for carrying water from three springs located at the head of said pipe line to her said real property above described, to-wit, said Section 16; that said pipe line runs for a distance of about five miles in a southerly direction from said section 16 into the hills, where are situate the three springs supplying water for said pipe line; that plaintiff and cross-defendant is and has been since July 6th, 1932, the owner and in possession of said pipe line, the right of way wherein same is laid and the said three springs at the head of said pipe line, and has at all times during her said ownership of same used the waters of said springs on said section 16, for domestic and irrigation purposes.

''That the plaintiff and cross-defendant and her predecessors in interest have owned and been in possession of said pipe line, the right of way over which it is laid and the three springs for supplying water for said pipe line for more than forty years prior to the bringing of this action and during said period of time have kept in repair and maintained said pipe line as a means of conveying water from said three springs to said section 16 for domestic and irrigation purposes and during said time have continuously appropriated all of the water flowing from said three springs, and used same except as hereinafter found to have been used by defendants and cross-complainant and their predecessors in interest.

''IV. That said appropriation of water from said three springs was made by a predecessor in interest of plaintiff and cross-defendant in July, 1894, and the pipe line conveying said waters to Section 16 above mentioned, was completed in July, 1895, and water conducted through said pipe line to said section 16, and used thereon for domestic and agricultural purposes and have ever since been used by plaintiff and cross-defendant and her predecessors in interest for domestic and agricultural purposes on said section 16. That the title to the land for which said waters were appropriated, to-wit, said section 16, and said pipe line, right of way for same and said water rights have been assigned and conveyed by mesne conveyances to the plaintiff and cross-defendant and that she is the owner of and in possession of the same.

"V. That the defendant and cross-complainant, Frances Howard, is the owner of and together with her husband, defendant Frederick Howard, is in possession of the N.E.¼ of the S.E.¼ of section 31, Township 8 north, range 16 west, S.B.M., in the County of Los Angeles, State of California. That the above described pipe line and right of way for same, now owned by plaintiff and cross-defendant, passes over and through the above described property of defendant and cross-complainant; that at the time said pipe line was constructed and the right of way for same acquired in July, 1895, by a predecessor in interest of plaintiff and cross-defendant, the above described property of defendant and cross-complainant was unoccupied public land belonging to the United States Government.

"That the defendants and cross-complainant claim and assert some right, title and interest in and to the water flowing through said pipe line, but that such claims are without right, title or any interest whatsoever, and that defendants and cross-complainant have not nor either of them any right, title or interest in or to said pipe line, the right of way for same or to the water flowing through said pipe line or any part thereof."

It was further found that when Almeda Gookins executed the so-called deed dated September 3, 1904, she "did not own and was not in possession of, and had not prior thereto owned or been in possession of the right of way for pipe line, which said instrument purported to grant to Henry Hatch, the grantee named therein, but that at the time of the purported grant, the said Henry Hatch owned and was in possession of such right of way and had theretofore been the owner of and in possession of the same for about ten years immediately prior thereto."

In connection with their first point, appellants urge that the evidence does not support that portion of finding of fact numbered three, above quoted, to the effect that "the plaintiff and cross-defendant and her predecessors in interest have owned and been in possession of said pipe line, the right of way over which it is laid and the three springs for supplying water for said pipe line, for more than forty years prior to the bringing of this action . . ."—for the reason that, while the evidence shows without dispute that the 40 acres of land belonging to appellant Frances Howard was unsurveyed government land until 1901; that the survey thereof was ap-

proved August 29, 1902, and was filed in the land office August 29, 1903; that the pipe line crossing appellant's land was built by Henry Hatch in 1895, at which time said land was occupied by one Leo Frankenberg, a squatter; and that when Mrs. Gookins moved upon the property about October, 1895, she acquired the interests of said Frankenberg,—no evidence was offered by respondent that Henry Hatch, who built the pipe line, secured the consent of said Leo Frankenberg to lay the pipe line over the property then in his possession and now belonging to appellants.

In 1894 Henry Hatch, predecessor in interest of plaintiff and cross-defendant located the aforesaid springs five miles south of his section 16 in the west end of Antelope Valley in a dry belt. In July, 1894, he filed for record in the office of the County Recorder of Los Angeles County his claims to the water flowing from these springs. All of these springs were discovered, located and appropriated upon unsurveyed and unoccupied government land. In each recorded claim Hatch set out as the intended use of the water that "Said water is to be conveyed in iron or other pipe of sufficient size to carry the same to Sec. 16, Township 8N, Range 16 West, S.B.M. and other land to be used for irrigation, domestic and mechanical purposes."

In 1895 Hatch constructed an iron pipe line from the springs located by him the preceding year, and about July 1, 1895, water was flowing out of this pipe line onto section 16 and being used thereon by Hatch.

In December 1895, shortly after completion of the Hatch pipe line, Almeda T. Gookins settled on that part of section 31 now the property of defendants and cross-complainant and through which Hatch's pipe line passes. On September 15, 1903, Mrs. Gookins filed a homestead upon the land in question. In 1896 Bertram Gookins, the eldest son of Almeda T. Gookins, installed 1,700 feet of pipe line from Twin Oaks Springs and brought the water down to the place where his mother was living on the west end of her homestead. The water taken through this 1,700 foot pipe line supplied Mrs. Gookins with water for domestic use and for such cattle and chickens as she had on the place up to the winter of 1904-1905, when she moved with another son, Arthur, over to section 36 to the west and in another township. However, prior to such removal, Mrs. Gookins had filed on Twin Oaks Springs as a source of water supply for use on her homestead.

In their closing brief, appellants succinctly epitomize the

grounds upon which they base their claims for relief herein as follows: "Appellants do not claim any water right appurtenant to the land now belonging to Frances Howard, except either by grant under the deed of Almeda T. Gookins to Henry Hatch, of September 3, 1904, or by the establishment of a prescriptive right through user."

We shall therefore first give consideration to appellants' claim of title under the deed executed September 3, 1904, by their predecessor in interest, Almeda T. Gookins, to Henry Hatch, accepted and recorded by him, as well as to the correctness of the court's ruling sustaining an objection to the introduction of said deed into evidence. The document entitled "Deed for Water Pipe Line," reads as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"That I, Almeda T. Gookins, of Los Angeles County, State of California, hereby deed, set forth and relinquish unto Henry Hatch (or assigns) of said County and State, so much of my land as is now occupied by a pipe line now owned by said Hatch, upon or in N ½ of S.E. ¼ of Section 31, Township North 8 and Range West 16, San Bernadino Meridian and Base, and hereby bind myself, heirs and assigns for the continuance of the same. This with the express understanding that I am to have the continuance of the right to use water for domestic purposes only for one (1) family, and such stock as can be constantly maintained by said family only by herbage grown upon my land as set forth above.

"And I further agree to allow the owner or owners of said pipe line to have for themselves, agent or agents and helpers, free acess and use of such of my land as may be needed for making repairs to said line.

"ALMEDA T. GOOKINS."

■ It is appellants' contention that the title to the right of way for the pipe line across the property now owned by them was vested in plaintiff's predecessor in interest, Henry Hatch, for the first time only after the execution and delivery of said "Deed for Water Pipe Line" and the recording thereof. At the time Mrs. Gookins moved onto the property, she acquired the interest of one Frankenberg, who was then occupying the property referred to on a squatter's right. Before Mrs. Gookins' entry upon the property, some improvements in the form of a small house and a barn had been made thereon. However, we have searched the record in vain for any material or substantial evidence that, at the time in

July, 1894, when Hatch located his springs, Frankenberg was on the property now owned by defendants. In any event, defendants' attempt to extend the time of settlement by Mrs. Gookins upon the land back to the date when the same was occupied by Frankenberg because of the purchase of improvements on the land covered by such former settler's homestead is futile. The law seems clearly established that the doctrine of relation never carries a patent back to the date of any entry other than that upon which it is based. The settlement of Mrs. Gookins alone can be considered and that dates, as already stated, from December, 1895, some time after the location of the Hatch Springs and the completion of his pipe line. It is only Mrs. Gookins' own settlement that can be considered, unaffected by her purchase of improvements from the squatter Frankenberg. The latter had no claims upon the land when Mrs. Gookins settled thereon and she acquired none through her purchase of improvements thereon from such previous occupant (*Lewis* v. *Rio Grande W. Ry. Co.*, 17 Utah 504 [54 P. 981, 983]; *Quinby* v. *Conlan*, 104 U.S. 420, 422 [26 L.Ed. 800]; *Haight* v. *Costanich*, 184 Cal. 426, 430 [194 P. 26]).

The settlement which the law of Congress will recognize—except where the claim is made by the widow or heirs of a deceased settler—must be personal to the settler and not that of others who may have conveyed to him. The squatter Frankenberg was without power to create an easement over the land occupied by him, because he did not possess or own such land, and it is axiomatic that no one can sell or convey to another that which he does not himself own. Therefore, Hatch was not required to obtain from squatter Frankenberg, an easement for his pipe line over the land now owned by defendants because the latter, being without ownership or proprietary interest in such land, was without power to grant an easement thereon.

At the time the springs in question were located, and later when the pipe line was constructed, the property now owned by defendants was unsurveyed and unoccupied government land and, being public lands of the United States at the date when the pipe line was constructed upon such land, the Act of Congress of 1866 (U.S.Rev.Stats., § 2339, 30 U.S.C.A. § 51) operated as a grant by the United States of the right of way by which the water was conveyed over said land.

The section just cited reads as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other

purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right-of-way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. . . ."

Later this act was amended by the addition of section 2340, to the effect that all homesteads allowed should be subject to vested and accrued water rights and rights to ditches used in connection therewith.

In *Wood* v. *Etiwanda Water Co.*, 122 Cal. 152, 157 [54 P. 726], it was held:

"As to the lands owned by the plaintiffs which were not within the grant to the railroad, and which were public lands of the United States at the date of the appropriation under which defendant claims the water, the act of Congress of 1866 (U.S.Rev.Stats., sec. 2339) operated as a grant by the United States of the water so appropriated and diverted, and of the right of way for ditches and canals by which the water is conveyed; and by the next section (2340): 'All patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section'; so that as to plaintiff's lands acquired from the United States after the water now claimed by the defendant was appropriated, defendant's right rests upon the statute, . . ."

And in *Ware* v. *Walker*, 70 Cal. 591, 595 [12 P. 475], the court said:

"The plaintiff, by the construction of his ditch, and the appropriation and user of the water of the stream, acquired as against the defendant, a subsequent purchaser from the United States, as complete and perfect a right to maintain his ditch, and have the water flow to, in, and through the same, as though such right or easement had vested in him by grant. Where the use of a thing is granted, everything is granted essential to such use. Such a right carries with it an implied authority to do all that is necessary to secure the enjoyment of such easement."

In the instant case, while the land in question continued to be part of the public domain, Hatch or his successors

in interest were licensees of the government, but when such part of the public domain passed into the private ownership of Mrs. Gookins through her filing of a homestead thereon, it was burdened by the easement granted by the United States to Hatch (*Smith* v. *Hawkins,* 110 Cal. 122, 125 [42 P. 453]; *Happy Valley Land & W. Co.* v. *Nelson,* 169 Cal. 694, 695, 696 [147 P. 966]).

Although the federal statute speaks only of "ditches and canals," these terms are broad enough so that a right of way may be acquired for dams, flumes, pipes and tunnels (*Utah L. & Tr. Co.* v. *United States,* 230 F. 343, 345 [144 C.C.A. 485]).

In view of the foregoing, it must be held that on September 3, 1904, when Almeda T. Gookins executed the aforesaid document denominated "Deed for Water Pipe Line," Henry Hatch, plaintiff's predecessor in interest, was then vested with and had title, through statutory grant from the United States of the right of way for his pipe line over the property of defendants' predecessor in interest. The deed from the United States to Almeda T. Gookins conveying to her a homestead expressly reserved and exempted the vested right of way. When Mrs. Gookins executed the aforesaid "Deed for Water Pipe Line" she had nothing to convey, the instrument was a nullity and the trial court properly excluded it from evidence. Appellants' contention that Henry Hatch or any of his successors in interest, including plaintiff herein, were estopped by the provisions of subdivision 2 of section 1962 of the Code of Civil Procedure from questioning the recitals in and contents of Mrs. Gookins' deed, is unavailing.

The general rule is that estoppel by deed is applied against the grantor, who is estopped by the recitals in his deed purporting to grant absolute title to the property, from denying that before and at the date he executed the deed he had such absolute title and by the deed in question conveyed such title to the grantee. (*Stinchfield* v. *Gillis,* 96 Cal. 33, 36 [30 P. 839]; *De Frieze* v. *Quint,* 94 Cal. 653, 659 [30 P. 1, 28 Am.St. Rep. 151].)

But a vendee or grantee of land is not estopped from disputing the validity of the title of the vendor or grantor. (*Wenzel* v. *Schultz,* 100 Cal. 250, 254, 255 [34 P. 696]; *Robinson* v. *Thornton,* 102 Cal. 675, 683 [34 P. 120].) That is ex-

actly the situation confronting us. In the instant case plaintiff, as the successor in interest of Henry Hatch, the grantee under Mrs. Gookins' deed, challenged and repudiated any title or right in Mrs. Gookins, contending that she did not convey anything because she had nothing to convey, for the reason that at the time Mrs. Gookins executed her deed plaintiff's predecessor in interest was then himself vested with title to the right of way for his pipeline over Mrs. Gookins' property through a statutory grant from the United States. This plaintiff had a right to do. Were the rule as contended for by appellant, the grantee under a deed would be estopped, on a trial to recover the consideration paid for property to which the grantor had no title, from asserting that such grantor sold the property when he did not own it. Such is not the law. As was said in *Wenzel* v. *Schultz, supra,* at page 255, quoting from *San Francisco* v. *Lawton,* 18 Cal. 476 [79 Am.Dec. 187], ''A grantee in fee may deny that his grantor had any title.''

From what we have hereinbefore said, it follows that the court committed no error in refusing to admit evidence as to the consideration paid by Almeda T. Gookins to the squatter Frankenberg for his claimed rights in the land later homesteaded by Mrs. Gookins, and a portion of which was later conveyed to defendant Frances Howard by mesne conveyances. The proffered testimony was immaterial, as was the testimony concerning differences over water rights between Henry Hatch ˙ and one Pratt, which testimony was offered to show that Pratt, a squatter on unsurveyed public lands, had the right to keep others from invading his right of possession and that Pratt exercised that right in allegedly preventing Henry Hatch from building his pipe line over the unsurveyed government land then occupied by Pratt as a squatter. Equally inadmissible were Henry Hatch's conversations with and statements to Almeda T. Gookins concerning the aforesaid deed of September 3, 1904, involving the right of way for the pipe line, because at the time of the execution of the deed Hatch was already the owner of the right of way for his pipe line over the property affected by the deed in question. For the same reason, testimony as to defendant Fred Howard's reliance on the recorded deed of Almeda T. Gookins of September 3, 1904, was properly excluded. No error was committed by the court in refusing to admit into evidence a deed

from Henry Hatch to one Whipple and others dated March 8, 1905. This document was offered in evidence for the stated purpose of "further establishing the fact that Henry Hatch had accepted the deed of September 3, 1904, from Almeda T. Gookins conveying the pipe line right of way across the 40 acres involved herein. . . ." This deed was inadmissible for the reasons herein pointed out that by it Mrs. Gookins divested herself of nothing for she owned nothing of what she attempted to convey, and by such deed Henry Hatch therefore acquired nothing.

Appellants urge that inasmuch as Henry Hatch failed to file a map of his right of way over public lands of the United States and secure the approval of the same by the Secretary of the Interior in accordance with the provisions of the Act of March 3, 1891, he did not have a right of way over the Gookins Homestead, and that her deed to him of September, 1904, was essential to vest such title in him. This claim is without merit. The aforesaid Act of March 3, 1891, entitled "An Act to repeal timber-culture laws, and for other purposes," by its very language negatives any legislative intent to amend or repeal the aforesaid Acts of 1866 and 1870 embodied in U. S. Revised Statutes, sections 2339 and 2340. The act upon which appellants rely reflects upon its face that it was enacted to cover a very different and wider field of irrigation, viz., the construction of canals and ditches to supply water for public purposes, and was not intended to apply to an individual who, as in the instant case, takes water from springs to care for his personal needs, for domestic and irrigation purposes as disclosed by the record in this case.

The provisions of the Act of March 3, 1891 (§ 18, chap. 561 [43 U.S.C.A. §§ 946, 947]) read in part as follows:

"Sec. 18. 'The right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any State or Territory, and which shall have filed or may hereafter file with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof; . . . .

"Sec. 19. 'Any canal or ditch company desiring to secure the benefits of this Act, shall within twelve months after the location of ten miles of its canal, if the same be upon surveyed

lands, and if upon unsurveyed lands, within twelve months after survey thereof by the United States, file with the register of the land Office for the district where such land is located a map of its canal or ditch and reservoir. . . .' ''

While it is true, as contended by appellants, that section 20 of the act [43 U.S.C.A. § 948] contains a provision that the same shall apply to ''all canals, ditches, or reservoirs, heretofore or hereafter constructed, whether constructed by corporations, individuals, or association of individuals . . .,'' nevertheless, the purpose and intent of the act remains unchanged and definitely applies to canals, ditches or reservoirs utilized for supplying water for irrigation etc., for public use as a commercial enterprise to the users thereof for pay and does not affect an individual appropriating water for his individual use. The act was construed in the case of *United States* v. *Tujunga Water & Power Co.*, 18 F.2d 120, 122, wherein it was held that the purpose of the Act of March 3, 1891, authorizing the acquiring of water rights in the public lands by canal and ditch companies for irrigation, ''was quite plainly to aid irrigation and other projects, having the main end in view to render dry lands productive. The supplying of communities, either thickly or sparsely inhabited, with water for domestic and yard irrigation, is fairly within the main objects to be accomplished.'' And further that ''it is not that the Government is interested in having constructed conduits and storage reservoirs of the exact and particular kind contemplated by the parties who make locations on Government land; if, within the general plan outlined by the maps of location, substantial improvements are made, which are of practical *use to an irrigation company in its business of supplying water to the inhabitants of the particular territory,* the requirements of the statute are satisfied and the rights obtained may not be disturbed.'' (Italics ours.)

That the Act of March 3, 1891, did not amend or repeal the aforesaid Revised Statute, section 2339 (Act of July 26, 1866) was the holding in *United States* v. *Utah Power & Light Co.*, 208 F. 821, 823, and cases therein cited. On appeal to the United States Circuit Court of Appeals (209 F. 554 [126 C.C.A. 376]), the judgment of the District Court was reversed on the ground that another Act of Congress, that of May 14, 1896, relating to electric light companies did modify the aforesaid section 2339 of the Revised Statutes. At page 561 of its decision, the court said:

"The Government does not contend that Sec. 2339 of the Revised Statutes has been wholly repealed, but merely that the subsequent act of 1896 has withdrawn from operation of that section the subject of generating, manufacturing, or distributing electric power, the manner of acquiring rights of way over the public lands for those purposes, and the nature and extent of such rights. We think this contention is sound."

Again, on page 562, the court says:

"Obviously, that act was not intended to interfere with the operation of section 2339; for no such proviso is found in the act of May 14, 1896. . . . It will thus be seen that Congress has wisely adapted and molded its legislation to meet the requirements of irrigation in a 'dry and thirsty land'."

In *Rasmussen* v. *Blust*, 85 Neb. 198 [122 N.W. 862, 133 Am.St.Rep. 650], the syllabus reads:

"The failure of the irrigator to file a map in the Land Office and secure the approval of the Secretary of the Interior, in accordance with the Act of March 3, 1891, entitled an Act to repeal timber culture laws and for other purposes, and the acts supplementary thereto, does not destroy the privileges protected by Section 2339 of the Rev. Stats. of the United States."

In the Rasmussen case, *supra,* at page 864, the following language of the Secretary of the Interior in the case of *Lincoln County Water Supply & L. Co.* v. *Big Sandy Reservoir Co.,* 32 Land Dec. Dept. Int. 463, 465, is quoted with approval:

"While the clause above quoted from Section 20 of the Act of March 3, 1891, extends the benefits of the act to all canals, ditches, or reservoirs theretofore constructed upon the public domain, among which is the right to file in that behalf with the land department a map of such canals, ditches, and reservoirs, and secure the approval of the Secretary of Interior thereof, *yet the right of claimants under section 2339 of the Revised Statutes are in no wise dependent upon an approval of such maps."* (Emphasis added.)

In the case of *Gila Water Co.* v. *Green,* 27 Ariz. 318 [232 P. 1016, 1018], we find the following:

"The appellant may claim through either or both of these sources. In other words, the Act of 1891 does not repeal sections 2339 and 2340, *supra,* but is simply a method of acquiring a more extensive and secure right than is gotten through these sources. *United States* v. *Utah Power & Light Co.* (D.C.), 208 F. 821: I Weil on Water Rights, sec. 440: *Ras-*

*mussen* v. *Blust et al., supra; Cottonwood Ditch Co.* v. *Thom, supra.*"

To the same effect is the case of *Cottonwood Ditch Co.* v. *Thom,* 39 Mont. 115 [101 P. 825, 104 P. 281].

It must therefore be held that the failure of Hatch to file a map and secure the approval of the same by the Secretary of the Interior pursuant to the provisions of the aforesaid Act of Congress of March 3, 1891, did not affect, impair or destroy the vested rights to a right of way for his pipe line obtained by him pursuant to the provisions of sections 2339 and 2340 of the Revised Statutes of the United States.

We come now to a consideration of appellants' second and final major claim, which is that they had acquired a water right by user and prescription in accordance with the laws and customs of the State of California in the water flowing through the pipe line of respondent, for the use and benefit of the land acquired by appellants.

The trial court found that defendants' predecessors in interest, "commencing about 1915, and from time to time thereafter, but not continuously did take and use water from the pipe line of plaintiff and cross-defendant for household use; that such use of water was not hostile or adverse to plaintiff and cross-defendant or her predecessors in interest or to their rights and claims in and to said water, and did not appreciably diminish the flow of the water in said pipe line to plaintiff and cross-defendant's said ranch." In short, the court found that up to the time appellants acquired title and possession of the lands in question in 1939 no prescriptive rights had arisen in and to the water flowing through the pipe line constructed by respondent's predecessor in interest, Henry Hatch. Since the action with which we are here concerned was commenced October 1, 1940, it is obvious that no prescriptive rights have arisen since appellants obtained title to and possession of the land through which the pipe line passes.

The facts or elements which are necessary to the existence of a prescriptive water right have been set forth in a veritable forest of cases. To perfect such right, the use of the water must be: (1) actual, (2) open and notorious, (3) hostile and adverse to the original owner's title, (4) continuous and uninterrupted for the statutory period, and (5) under a claim of title in the claimant, and not by virtue of another right. (25 Cal.Jur. 1156, § 171, and cases therein cited.)

■ The burden is upon the party who claims title by prescription to clearly prove by competent evidence all the elements essential to such title. The law will not allow the property of one person to be taken by another, without any conveyance or consideration, upon slight presumptions or probabilities (*Niles* v. *Los Angeles,* 125 Cal. 572, 576 [58 P. 190]).

■ Applying the above tests to the evidence in the case here under consideration, we are convinced that the finding of the court as to the defendants' alleged prescription are correct and just. The question as to whether or not the use was under a claim of right, or the mere matter of neighborly accommodation up to 1939, was a question of fact to be determined by the court in the light of the relations of the parties, their conduct, and all the surrounding circumstances. The court below saw the witnesses, heard them testify, and found the facts against the defendants. And where the court's finding is based upon conflicting evidence, it is conclusive upon the appellate court whose function is not to consider the relative weight of conflicting evidence, but only the legal sufficiency to support the challenged finding (*Dell* v. *Hjorth,* 51 Cal.App.2d 576, 578 [125 P.2d 505]).

There was before the court testimony that no one lived on the homestead of Mrs. Gookins until the fall of 1910, at which time her son Bertram built a house on the east end of the property; that he put a hole in respondent's pipe line and attached a stand pipe, under which a bucket could be placed. Mr. Gookins described it as a "three-quarter inch stand pipe with a three-quarter inch valve." When asked "How did you take the water then from the pipe line to the house?" he replied "What little we took up was carried in buckets or barrels." In reply to the question whether he used any water from the pipe line other than what he carried up to the house, the witness stated "just for watering stock." The stock was taken down to the pipe line for watering. The witness moved away from the house on the homestead in 1911, returning in 1913. During these two years the house was unoccupied. Upon his return, the witness used water from the pipe line during the fall of 1913, all of the year 1914, and part of the following year. In 1915, when Bertram Gookins moved away, the house on his mother's homestead was occupied by Mr. and Mrs. Cherbbonno, the latter of whom was Bertram's sister. The three children of the Cherbbonnos and Bertram's mother also lived in the house. When the city of Los Angeles con-

structed its aqueduct, the workmen used water from the pipe line, apparently with the consent of one Van Avery, who was a tenant on section 16. The city, at that time, patrolled and repaired the pipe line. That the witness Bertram Gookins never considered he had a right to extract water from the pipe line is indicated by his testimony relative to a previous conversation with respondent's counsel concerning any water right possessed by his mother Almeda T. Gookins, wherein the witness stated: "I said to you at that time that I don't know anything about her ever having a water right." Another circumstance that impairs the claim that Mrs. Gookins ever claimed she had title or a right to water from the Hatch pipe line is the fact that, at considerable expense, she piped water from Twin Oaks Springs to a house on the west end of her homestead using such water for domestic purposes, for watering chickens and live stock from the fall of 1896 until she moved over to section 36 with her son Arthur in the winter of 1904-1905, a period of some eight years. Mrs. Gookins also filed on and made an appropriation of the waters from this spring as appurtenant to her homestead. She moved away from her homestead for a period of some ten years, while residing on section 36 in another township, and did not return until 1915, when she went to live with her daughter and the latter's husband and family as heretofore narrated. While the Cherbbonnos occupied the homestead, a limited use was made of the water—first in buckets, and after 1921 for a time with a faucet installed at the kitchen sink.

Bertram Gookins' use of the water was not continuous. During the five years in question he was only intermittently at the house. Furthermore, Bertram Gookins had no title to the land and so far as the evidence shows did not occupy the status of a tenant, but that of a mere squatter. The Cherbbonno family occupied the homestead property from December 1915 to 1924. Until she acquired the property in 1923 by deed from her mother, Mrs. Cherbbonno's use of the water could hardly be said to have built up a prescriptive right in herself or in her mother. It is also noteworthy in connection with appellants' claim that Mrs. Gookins believed she had a water right in respondent's pipe line, that when she executed the deed to the homestead in favor of her daughter, Mrs. Cherbbonno, she made no mention of the water right, which her purported deed to Hatch in 1904 attempted to grant. Neither was any such mention made in the deed from Helen

Cherbbonno to Dana R. Weller, executed in 1925. ▮ The existence of the claim of right in the mind of the person claiming it will not suffice to establish title by prescription. It must be asserted in such a manner that the owner is apprised of the claim. As was said in *Clarke* v. *Clarke*, 133 Cal. 667, 670 [66 P. 10], "If any party who is allowed by silent permission to pass over the lands of another, nothing being said as to any right being claimed, after five years, without showing that he ever communicated such claim in any way to the owner, can thus gain title by prescription, it would be a blot upon the law." ▮ Prescriptive rights are established only when the enjoyment thereof is adverse, continuous and under claim of legal right, and not by consent, permission or mere indulgence of the owner of the alleged servient estate. It should also be borne in mind that, except for a time during the construction of the aqueduct when the city of Los Angeles patrolled and repaired the pipe line, it was maintained solely by Hatch and his successors in interest. ▮ The theory of permission or acquiescence in the taking of water from the pipe line is strengthened by the fact that when measured in 1940 the water was estimated at something more than 40,000 gallons per day, while the amount of water carried in buckets and additional water used for livestock, if it averaged even 50 gallons per day, would not seriously impair the supply of water to the owners of the pipe line. The same situation prevailed from 1925 to 1934 when Judge Weller owned the property. This constituted no real invasion of respondent's rights to the water supply and would lend credence to the theory of implied permission. In 2 Farnham, Waters, paragraph 535, the author says:

"If the use which was made of the water was one which the proprietor had a right to make, and it did no injury to the other person, it would not make the slightest difference how long it had continued. It was not until the use of the water became wrongful as to another or injured his rights that it became adverse so that its continuance would give a good title."

And in *Jobling* v. *Tuttle*, 75 Kan. 351 [89 P. 699, 9 L.R.A. N.S. 960, 964], it is said that "It must therefore be adverse; and this character of the use has been defined to be a use under a claim of right known to the owner of the servient tenement,— use such as the owner of an easement would make of it without permission asked or given, and disregarding entirely the claims of the owner of the land."

That owners are not affected by acts which do not bring to them knowledge of the assertion of an adverse right, and that the use by the adverse claimant was not hostile unless there was an actual clash with the rights of the actual owners, and that before a right by prescription is established the acts by which such establishment is sought must operate as an invasion of the rights of the parties against whom it is set up, was the holding in *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 185, 192 [30 P. 623]; *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105, 133 [287 P. 475]; *Churchill* v. *Louie*, 135 Cal. 608, 611 [67 P. 1052]; *Skelly* v. *Cowell*, 37 Cal.App. 215, 218 [173 P. 609]; *Faulkner* v. *Rondoni*, 104 Cal. 140, 147 [37 P. 883]; *Pabst* v. *Finmand*, 190 Cal. 124, 128, 129 [211 P. 11]. To the same effect, was the holding in the well considered case of *Jobling* v. *Tuttle*, 75 Kan. 351 [89 P. 699, 9 L.R.A. N.S. 960, 965, 966], and *Dondero* v. *O'Hara*, 3 Cal.App. 633 [86 P. 985]. The record justified the conclusion by the trial court that none of the owners of the 40 acres later acquired by appellants claimed title to any water right, or hostile or adverse rights against the owners of the pipe line or its waters, until such claim was urged by appellants in 1939. We have examined the cases relied upon by appellants and find that both the factual background thereof and the legal issues presented therein are dissimilar to the case at bar. ▮▮▮ Estoppel is not created against an owner to assert his rights by mere passive acquiescence in the use of water by another (*Holbrook Irr. Dist.* v. *Arkansas Valley S. B. Irr. L. Co.*, 42 F.2d 541, 548).

For the foregoing reasons the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied March 27, 1946, and the opinion was modified to read as above, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1946.